### (March 29, 1966)

■ In the Matter of the COMMISSIONER OF WELFARE OF THE CITY OF NEW YORK, Respondent, v. RICHARD WENDTLAND, Appellant.

APPEAL (1) from an order of the Family Court, New York County, dated April 2, 1965, finding against appellant in paternity proceedings and (2) from an order of said court, dated August 12, 1965, which denied a motion by appellant for an order directing a new trial.

Per Curiam. Respondent appeals from an order of filiation and support granted by the Family Court April 2, 1965, and from an order of the Family Court dated August 12, 1965, denying respondent's motion to reopen the proceedings or for an order vacating the order of filiation and support and granting respondent's motion for a new trial.

The parties met in October, 1963 and admittedly engaged in a single act of sexual intercourse which complainant testified occurred December 31, 1963. The child was born September 24, 1964. Complainant testified she learned of her pregnancy the end of January, 1964, and advised respondent of the fact in February, 1964, and that was the only time she discussed her condition with him. Complainant testified, and respondent denied, that at that time respondent suggested an abortion in California. The petition in this matter was filed July 8, 1964.

Complainant's mother testified she spoke to respondent when her daughter was four months pregnant. He admitted an act of intercourse but informed her at that time that he was not the father because he could not make anyone pregnant, " There was some reason that he said that for."

Respondent admitted the act of intercourse, and testified that after his return from Pakistan in 1960 he went to Tia Juana, Mexico, and had an operation to render himself sterile. Respondent testified his conversation with complainant occurred shortly before the conversation with complainant's parents.

Dr. MacLeod, an outstanding expert on male reproduction and male sterility, testified that he conducted a test on November 7, 1964, on a specimen of respondent's semen, found it was devoid of spermatozoa and concluded respondent was sterile. Dr. MacLeod, in response to questioning, testified in some detail concerning the nature of a vasectomy, and the possibility rather remote, of a later successful operation to restore fertility if the original operation is properly performed.

Dr. Fede, who conducted a laboratory test on the semen of respondent on September 15, 1964, and a repeat on September 19, 1964, testified there were no spermatozoa in the semen examined. Dr. Fede acknowledged if a man has a vasectomy it is possible for a later operation to restore fertility. Neither doctor could testify with certainty respondent was sterile as of December 31, 1963.

Respondent on direct examination testified that a few days prior to the trial he had consulted a Dr. Zorgniotti and had been examined by him. On cross-examination respondent stated he did not have any operation performed during the past Summer. Dr. Zorgniotti was not produced to testify.

In that posture of the case and with substantially the evidence heretofore adverted to, the court found complainant to be a credible witness, entirely worthy of belief, and declared respondent to be the father of the child. The court expressly found that respondent "failed to establish by any competent medical proof" that he was rendered sterile in 1960 or any other time.

Subsequent to the determination and on June, 1965 respondent moved for a new trial. Respondent, in his affidavit in support of a motion for a new trial, says that when he consulted Dr. Zorgniotti prior to the first trial he was advised that in order to determine, with medical finality, if respondent had undergone a vasectomy in 1960, it would be necessary to submit to surgery. Understandably, respondent was reluctant to undergo such an operation. However, after the determination in April, 1965 and on May 6, 1965, respondent entered University Hospital and on May 7, 1965, an operation was performed by Dr. Zorgniotti. Of course respondent could have had the same operation prior to trial and, in that sense, the proffered evidence is not newly discovered. He probably believed it unnecessary in light of the medical testimony and of his own testimony of a vasectomy.

In a supporting affidavit by Dr. Zorgniotti, a specialist, the details of the operation are recited. Dr. Zorgniotti asserted, as a result, "I am able to state with reasonable certainty that the respondent did in fact have bilateral interruption of the vas deferens which did produce sterility", that it was not of recent origin, and concluded "that a bilateral interruption was performed sometime before 2–3 years prior to May, 1965."

The court in an able and scholarly opinion denied the motion, pointing out that respondent already had a trial and that the evidence now proffered was always available by proper diligence before the trial. Moreover, the motion was not timely made (CPLR 4405, 4406) and that even consideration of the proffered testimony would not be likely to change the result.

The standard of proof required to establish paternity in filiation proceedings is that such proof be " entirely satisfactory." " The expression ' entirely satisfactory ' is similar in meaning " to the requirement of " clear and convincing proof "; it does not mean proof beyond a reasonable doubt. (*Commissioner of Public Welfare* v. *Ryan,* 238 App. Div. 607, 608; *Commissioner of Public Wel-*