■ In the Matter of FLORECITA ESPIN, Appellant, v GEORGE PIERCE, Respondent. — Order, Family Court, New York County (Meyer, J.), entered on June 18, 1980, which dismissed the petitioner's paternity petition, reversed, on the law and on the facts, without costs or disbursements, the petition granted and the matter remanded to the Family Court for further proceedings on the issue of support. The Family Court order dismissing the petition gave as its entire rationale the following: "The Court finds that petitioner's testimony and evidence when weighed against the testimony of respondent and respondent's wife did not meet the high standard of proof required in this paternity action. Petitioner's proof was not clear, convincing and entirely satisfactory." While the Family Court failed to set forth the essential facts upon which its order was based, this court has a sufficient record before it to make its own findings of fact (see *Matter of Hudis v Hudis,* 64 AD2d 653). In any event, assuming the Family Court found against petitioner based on conflicting evidence involving the credibility of witnesses, a fair interpretation of the evidence compels reversal (see *Matter of Joan G. v Robert W.,* 83 AD2d 838). Petitioner stated that she met respondent in May, 1974 and began sexual relations with him in August of that year. Their relationship terminated in 1980. During that period of time she did not have a relationship with any other man. As a consequence of this relationship, she had abortions in 1974, 1975 and 1980 and gave birth to a girl on November 19, 1976. She claimed that respondent provided intermittent support for the child and acknowledged that she unilaterally placed respondent's name as father on the baptismal certificate of the child. Petitioner's testimony as to the continual relationship with respondent after the child's birth was substantiated by the introduction into evidence of five photographs, showing the respondent with the baby. Four of the photographs were taken in the petitioner's living room — two each on two different occasions — and one taken in the street. Termination of the relationship was attributed by petitioner to respondent's anger at the institution of this filiation proceeding. Respondent admitted that he met petitioner in 1974 and began a relationship with her. He also admitted that his wife gave him money to pay for petitioner's abortion in 1975. However, he claimed that after 1975 he was never involved with petitioner except on the occasions when the photographs were taken. He admitted he was in petitioner's presence at three times in response to her invitation and that petitioner engaged him in conversation about his "adopting the baby and putting the baby in [his] name" with the threat that if he refused, she would contact petitioner's wife. On cross-examination, he admitted a relationship with petitioner in 1974 and 1975 and conceded that he saw petitioner soon after the birth of the child but only on the occasions when the photographs were taken. Respondent's wife testified that she and respondent have three children and that after the birth of their last child in 1973, she and respondent experienced marital difficulties. In 1975, she gave her husband (respondent herein) $200 to pay for an abortion for a woman named "Flo." She stated that her husband never spent the night out of their home during 1974 and 1975 except for a few hours at times on unexplained absences and that he always left a phone number in case of emergency. After the fall of 1975 there

was a change in respondent's behavior because he realized that his wife did not trust him anymore. According to his wife, respondent continued to attend lodge meetings, but she would call almost every time to ascertain if he was there. This procedure was also engaged in with respect to the school which respondent was attending. She answered affirmatively to the question of whether, after the abortion which she paid for, she knew of all the places her husband went and where to reach him. She could not explain, therefore, the occasions on which the photographs were taken of respondent with petitioner's child. In the context of the testimony set forth above, perusal of the photographs is illuminating. All the witnesses were interested. Even so, much support for petitioner's case emanates from the admissions and reasonable inferences delineated in respondent's and his wife's testimony. Respondent adduced no evidence that petitioner had a sexual, or even social, relationship with any other man during 1974 and 1975. "The standard of proof required to establish paternity in filiation proceedings is that such proof be 'entirely satisfactory.' 'The expression "entirely satisfactory" is similar in meaning' to the requirement of 'clear and convincing proof'; it does not mean proof beyond a reasonable doubt" (Matter of Commissioner of Welfare of City of N. Y. v Wendtland, 25 AD2d 640, 641). We are satisfied that by this standard of proof, petitioner proved that at all times relevant to the paternity of the subject child, she had had an ongoing social and sexual relationship with respondent and with no other man. Respondent admitted to an active social relationship with petitioner which when placed in context with the other evidence adduced herein renders incredible respondent's denial of having had sexual relations with petitioner at the times relevant to the paternity of the subject child. Indeed, the evidence of the photographs, with the natural inferences arising from the physical circumstances presented therein viewed in the context of the testimony elicited at trial, raises the spectre that certain testimony may well have been "tailored" to fit the undisputed facts. Accordingly, we reverse and grant the petition, finding that respondent is the father of the subject child. The matter is remanded for a hearing on the issue of support. Concur — Sullivan, J. P., Carro and Lupiano, JJ.

Markewich and Bloom, JJ., dissent in part in a memorandum by Bloom, J., as follows: We recognize that the photographs taken by petitioner showing respondent with the child alleged to have been fathered by him is some evidence tending to establish paternity. Standing alone, however, we think it insufficient to warrant the conclusion that paternity was demonstrated by clear, convincing and satisfactory proof. The balance of the evidence submitted in support of petitioner's claim was sharply controverted and the determination by the trial court necessarily hinged on credibility. In these circumstances we think it was incumbent upon the trial court, which viewed the witnesses, observed their demeanor and heard their testimony to be singularly sensitive to the requirements of CPLR 4213 (subd [b]) so that we would be made aware of its findings on the issue of credibility. Its failure to "state the facts it deems essential" and the basis for its decision leads us to the conclusion that this appeal should be held in abeyance and the matter remanded for findings and conclusions, as required by CPLR 4213 (subd [b]).