OPINION OF THE COURT
John S. Parker, J.
The question confronting the court in this matter concerns the weight to be given a human leucocyte antigen (HLA) blood-grouping test in a paternity proceeding. More particularly, where the court does not reach the threshold of "clear, convincing and entirely satisfactory” proof without considering the HLA "probability of paternity” result, may the added weight of the test evidence allow it to do so?
This paternity proceeding was initiated by the petitioner mother filing with this court a paternity petition on March 5, 1984, said filing preceding the child’s birth. The child was subsequently born on September 25, 1984. Pursuant to this court’s order, at respondent’s request, dated January 25, 1985, an HLA blood-grouping test was administered and the resulting report dated June 4, 1985 filed with this court. The matter came on for hearing on October 15, 1985 with the hearing continued on October 23, 1985 and November 6, 1985.
Testimony received from the witnesses discloses that the petitioner gave birth to a previous child, Amy, now four years *587 old, who has been determined the respondent’s child by his admission.
The petitioner testified that she had sexual intercourse with the respondent on four occasions between December 1, 1983 and January 31, 1984. The first occasion was "a Friday night in the beginning of December” in a car near her father’s residence; the second occasion was on Christmas Day 1983, between 2:00 p.m. and 3:00 p.m. at her father’s residence; the third and fourth occasions were "in January 1984,” at night, in the Timber Lodge parking lot and a manufacturing company’s parking lot, respectively. No contraceptive precautions were taken. The petitioner also testified she had sexual intercourse with one Floyd D. in November of 1983. The petitioner, age 28, was unsure of the date of her last menstrual cycle, though stated eventually that "though she was not sure” it was about a week and one half or two weeks into December 1983. Petitioner’s bill of particulars indicates that her menstrual cycle "started in the second week of December and ended about the 18th day of December, 1983.” The child, Nicole, who is the subject of this proceeding, was born on September 25, 1984, after a normal period of gestation. The hospital records confirmed a full-term birth.
The respondent has denied the allegations contained in the petition. More particularly he has denied having had sexual intercourse with the petitioner on any of the four occasions in December 1983 and January 1984. He does admit that on Christmas Day 1983 he picked up the petitioner and their child Amy, at her place of residence in the morning, and they proceeded to the petitioner’s father’s house where he gave a Christmas present to his daughter, Amy. That at approximately 1:30 p.m. the others in the household left to go to the petitioner’s sister’s home for Christmas dinner. The respondent acknowledges being alone with the petitioner, in her father’s house, for a period of 30 to 45 minutes. Thereafter respondent indicates that he and petitioner went for Christmas dinner with the rest of the family.
There were many discrepancies in the petitioner’s testimony that may either be characterized as variations of the truth or mistake of fact due to a dim memory. However, her account of being alone with the respondent on Christmas Day 1983, at her father’s residence, for some fairly substantial period of time, was confirmed by all witnesses who had knowledge thereof as well as the respondent himself.
*588 Respondent’s testimony was bolstered by the testimony of both his parents and his current wife. The former testifying that he returned to their home between 3:00 p.m. and 3:30 p.m. on Christmas Day 1983 (approximately a 30-minute drive from petitioner’s sister’s home) and the latter that respondent spent the period from December 31, 1983 to January 9, 1984 at her residence in Minnesota (she then being respondent’s finacée).
Considering that each of the supporting witnesses for petitioner and respondent are related to, or closely associated with the parties, they are all considered by the court to be "interested” witnesses. With the added evidence of the hospital records (regarding birthdate and gestation period); the fact that respondent had lived with the petitioner for a substantial period of time and fathered her first child; that the petitioner and respondent both acknowledge being alone together at a time well within the acceptable standards of time between conception and birth (Matter of Commissioner of Social Servs. v Gibson, 55 NY2d 681; Matter of Joanne O. v Andrew H. W., 87 AD2d 615); and that there was no credible proof of access by others during the normal period of conception, the court finds an indication of paternity by no less than a "preponderance” of evidence though something less than "clear, convincing and entirely satisfactory” evidence.
Thus attention must be given the results of the HLA testing conducted by Roche Biomedical Laboratories, Inc., and received into evidence without objection and without expert medical witness edification. Considering red cell antigens in combination with the leucocyte antigens, as taken from the petitioner mother, the child Nicole and the alleged respondent father, the results are expressed as a "combined paternity index_of 1859 to 1” and a "probability of paternity of 99.94%.” The conclusions state further that the three individuals tested "share common genetic markers. Using the HLA system, along with ABO, RH, MNSs, Kell and Duffy, the probability of paternity is 99.94%, as compared to the random unrelated North American Caucasian population. Therefore, the alleged father is practically proven to be the biological father of the child”.
Though the court acknowledges that Family Court Act § 532 does not specifically mandate the acceptance of the "Hummel’s predicate” or "probability of paternity” as indicators of paternity (Matter of Angela B. v Glenn D., 126 Misc 2d 646) it nevertheless is impressed, absent medical testimony to the contrary, with a probability of paternity expressed as 99.94%. *589 Understanding that such probability would never be expressed as higher than 99.99% the respondent lacks but .05%.
Such evidence adds credibility to the testimony of the petitioner. The court is thus allowed and draws the conclusion that the discrepancies in her testimony undoubtedly were mistakes of memory as opposed to intentional prevarications.
Therefore, based upon the fact pattern presented in this particular matter, together with the substantial probability of paternity expressed in the HLA test, when considered with all of the evidence, paternity has been substantiated by clear, convincing and entirely satisfactory proof (Matter of Espin v Pierce, 85 AD2d 503; Matter of Commissioner of Social Servs. [Patricia A.] v Philip De G., 59 NY2d 137) in that respondent not only had the opportunity but did have sexual intercourse with the petitioner on Christmas Day of 1983. Such act did result in the conception and eventual birth of the child Nicole on September 25, 1984.
An order of filiation shall issue accordingly.
Further, upon the proof presented, the respondent shall pay to the Lewis County Department of Social Services the sum of $1,263.47, less any sums received by said Department from Medicaid as reimbursement for medical expenses of the child’s birth.
The issue of child support shall be referred to the hearing examiner for determination, if necessary.