■ In the Matter of ANN ROBINSON, Appellant, v MICHAEL SHAY, Respondent.—Order of the Family Court, Bronx County (John Pollard, J.), entered June 21, 1985, dismissing the paternity petition of petitioner-appellant Ann Robinson, reversed, on the law and the facts, an order of filiation entered and the matter remanded to the Family Court, Bronx County, for a hearing on the issue of support, without costs.

Petitioner-appellant Ann Robinson gave birth to a girl on June 29, 1983. She maintains that respondent-respondent Michael Shay is the father. He denies it. Mr. Shay and Ms. Robinson met in June 1981. They started dating about a year later and commenced sexual relations on August 25, 1982. Mr. Shay admits he slept with Ms. Robinson twice in August but never again. Ms. Robinson claims to have been in love with Mr. Shay. She contends they continued sexual relations until early November 1982 at which time she moved to Falmouth, Massachusetts.

Family Court dismissed her paternity petition on the ground that she failed to demonstrate by clear and convincing evidence that Mr. Shay is the father. For the reasons expressed below, we reverse, direct the entry of an order of filiation and remand the matter to Family Court for a hearing on the issue of support.

The record reveals that a human leucocyte antigen (HLA) blood test showed a 99.6% probability of Mr. Shay's paternity. Mr. Shay neither challenged the accuracy of HLA tests in general, nor did he challenge the accuracy of the specific test in question. Mr. Shay concedes he had sexual relations with Ms. Robinson. A number of cards admitted into evidence from Mr. Shay to Ms. Robinson contained sexual innuendo or referred to a strong emotional attachment. The last of these cards was dated September 28, 1982. Assuming a normal gestation period, the baby was conceived on or about October 6, 1982, less than two weeks after the last card and at a time when Ms. Robinson still lived in New York.

Ms. Robinson has the burden of establishing Mr. Shay's

paternity by clear, convincing and entirely satisfactory evidence. *(Matter of Commissioner of Social Servs. v Philip De G.,* 59 NY2d 137.) In combination, the facts stated above meet that burden. Concur—Kupferman, J. P., Carro, Ellerin and Wallach, JJ.

Kassal, J., dissents in a memorandum as follows: I dissent and would affirm the order of the Family Court. The Judge, after a filiation hearing at which both parties testified, dismissed the paternity petition, concluding that petitioner had failed to demonstrate by "clear and convincing evidence" that respondent was the father of the child.

In my view, examination of the entire record fully supports the determination by the trial court, which had an opportunity to hear the witnesses firsthand and to observe their demeanor, and its determination of the issue of credibility should not be interfered with. The record reveals a clear conflict in the proof as to the nature and extent of the relationship, insufficient to support the majority's reversal. This is especially so taking into account the operative standard in such cases, which imposes upon petitioner the burden of establishing respondent's paternity by clear and convincing proof *(Matter of Commissioner of Social Servs. v Philip De G.,* 59 NY2d 137; *Matter of Lopez v Sanchez,* 34 NY2d 662; *Matter of Commissioner of Welfare of City of N. Y. v Wendtland,* 25 AD2d 640).

In so deciding, my colleagues have ignored the strong contrary evidence in the record upon which the Family Court based its decision. Petitioner stated that she had sexual relations with respondent from August 1982 until November 1982, when she moved to Falmouth, Massachusetts and that this occurred three or four times per week. Respondent, however, testified that they had relations only a few times in August and that, after Labor Day, although they "remained friends", "the sex part of it died." He also stated that their friendship dwindled as well when petitioner "continued to talk to me about her [sexual] relationships with the other people in her life".

While the majority concludes that conception occurred on or about October 6, 1982, based upon a normal period of gestation, a critical fact overlooked by the majority is the claim that, during that first weekend in October, petitioner visited her ex-boyfriend in Montclair, New Jersey, and, afterwards, admitted that they slept together and had sexual relations. According to respondent, petitioner also discussed with him

her several prior lovers and abortions and that one involved a child fathered by the former boyfriend in New Jersey. Petitioner, on the other hand, denied ever having an abortion. Nevertheless, determination of the factual issues and credibility in this proceeding was more appropriately a matter for the trial court, and there is no basis on this record to interfere with the Family Court's findings. The majority's reference to the cards which were sent to petitioner overlooks that one of these, exhibit 1C, referred to her weekend in New Jersey, with a notation by respondent expressing his desire that petitioner have a "great time", certainly probative in light of respondent's testimony at the hearing.

Of further significance is the birth certificate, which records that the child was born June 29, 1983 but does not list the name of the father, notwithstanding petitioner's testimony that she telephoned respondent in December 1982, six months before the birth, to tell him that he was the father. While petitioner stated that she also told her family, friends and her roommate in the hospital, she did not advise her treating physician that respondent was the father nor did the doctor seek any information relating to conception or to her last menstrual period, matters on which petitioner failed to offer probative proof. This is incredible.

The majority places principal reliance upon the accuracy of the HLA blood test, which showed a 99.6% probability of paternity. The record does not reflect whether there was any blood test or inquiry as to the ex-boyfriend in New Jersey, who, it is alleged, had intimate relations during the critical period when, the majority finds, conception occurred. However, the admissibility and probative value of the HLA test result is not conclusive, which in essence is the result reached by the majority. The determination of my colleagues, in my view, inappropriately ignores all of the other evidence in the record in terms of the parties' credibility on which the Family Court based its decision. This could obviate the necessity for Family Court hearings on these matters, contrary to the legislative policy behind the enactment of Family Court Act § 531.

I agree with the trial court's determination, based upon its evaluations of the parties' credibility, that petitioner has not sustained her burden of proof by clear and convincing evidence.