(December 21, 1993)

■ ANGELO PIOLI et al., Appellants, v MORGAN GUARANTY TRUST COMPANY OF NEW YORK et al., Respondents. (And a Third- and Fourth-Party Action.) [605 NYS2d 254] —Judgment of the Supreme Court, New York County (Myriam J. Altman, J.), entered December 14, 1992, after jury trial, which dismissed the complaint, the third- and fourth-party actions and all counterclaims and cross-claims, unanimously affirmed, without costs. The appeal from the order entered January 16, 1992, directing entry of said judgment, is dismissed as subsumed in the judgment appealed from, without costs.

Plaintiff Angelo Pioli, who was employed as an ironworker foreman by fourth-party defendant Steel Structures, claims that he was injured after falling at a construction site at 60 Wall Street. Pioli and his wife instituted this action against defendant Morgan Guaranty Trust Company, the owner of the premises, and Tishman Construction Company, the general contractor at the site. Pioli attributes the accident to the

collapse of scaffolding on which he was standing. Wooden planks had been placed over structural steel beams to cover a hole that was to become an elevator shaft. Defendants Morgan and Tishman impleaded third-party defendant subcontractor Arc Electrical Construction Company which, in turn, impleaded fourth-party defendant subcontractor Steel Structures. The complaint asserts, *inter alia,* a violation of Labor Law §§ 200 and 240.

Trial was conducted using the reverse bifurcation method. Summations were made on the question of damages and the issue submitted to the jury. Then, following summations on the issue of liability, the jury was asked to determine the comparative negligence of the plaintiff and the various defendants with respect to Labor Law § 200.

At the close of the evidence, Supreme Court, outside the presence of the jury, informed counsel that it would direct a verdict in favor of plaintiff and against defendants pursuant to Labor Law § 240 on the issue of liability only. Defendants' counsel excepted to the directed verdict, reserving the right to make a motion with respect to the ruling at an appropriate time. The jury was instructed that, in assessing the amount of damages, liability was not to be considered. However, in the course of deliberations, the jury sent a note asking how it should proceed in the event it found that plaintiff partially or wholly responsible for the accident. The court responded that, "at this juncture, that's not to be considered by you. You are to fill out the verdict sheet as if the plaintiff had no responsibility."

On December 18, 1989, the jury rendered a verdict for damages in the amount of $105,500. Plaintiffs' counsel raised the objection that the court's failure to advise the jurors, in response to their question, that a directed verdict had been issued with respect to defendants' liability "influenced their ultimate decision as a result of which they ended with what I regard as an inadequate verdict in respect of damages." Plaintiffs' counsel was then explicitly asked if he wanted the court to either declare a mistrial or again submit the question of damages to the jury for redeliberation after a recharge. Plaintiffs' counsel responded, "Your Honor, at the end of the trial, I have ten *[sic]* days in which to make appropriate motions if there is anything further. I am not suggesting that I will ask, but I have the right to ask."

Following counsels' summations on the issue of liability, the court charged the jury with respect to comparative negligence. The first question on the special verdict sheet asked, "Was

plaintiff's fall caused by a plank or planks collapsing under him?" Although the posing of this question was inconsistent with the court's directed verdict on the issue of liability, plaintiffs' counsel did not interpose an objection, stating only, "I think you should have charged that Tishman was responsible to supply safety devices to prevent the accident." The court responded, "I don't think it matters for purposes of this charge, since I have already given you a directed verdict on liability * * * Proportions don't matter as far as you are concerned. The proportions only matter among the defendants. You still get 100 percent." Perhaps in reliance on the court's assurance with regard to the directed verdict, plaintiffs' attorney did not object further.

On December 20, 1989, the jury returned a verdict on the issue of liability, responding in the negative as to whether plaintiff's fall was caused by a collapse of the planking. The jury determined that defendants were not negligent, apportioning responsibility for the accident between plaintiff (80%) and third-party defendant Arc Electrical Construction Company (20%).

After the verdict was rendered, the court said, "I think I made a mistake in directing the verdict without giving the question of causation. That's why I gave it to them now." Plaintiffs' counsel thereupon inquired about the implications of the verdict. The court replied that, in effect, the jury had returned a defendant's verdict in its entirety. Plaintiffs' counsel then asked if the directed verdict was being withdrawn, to which the court replied, "It may be that I have to direct a mistrial on the whole thing because of the mess I am in with that. It may be that that is what I have to do is declare a mistrial, because I obfuscated a record."

The court explained to counsel for plaintiffs that it could not direct a verdict under Labor Law § 240 unless the jury, in the first instance, made a finding of causation crediting plaintiffs' proof with respect to the defective condition of the scaffolding, adding that "they didn't believe your client." Plaintiffs' counsel reminded the court of its statement that, irrespective of the jury verdict as to liability, plaintiff would "still get 100 percent." Once again, counsel for plaintiffs was explicitly asked if he wanted the court to declare a mistrial, to which he responded, "We will make—how many days do we have to make motions?" In light of the upcoming holidays, the court offered 30 days. The attorney for defendants then indicated an interest in participating in plaintiffs' motion, and the court suggested that counsel for both parties reassess their

respective positions. In anticipation that a settlement might be reached, the court set the matter down for conference, stating, "Why don't I put it on for January 23 which is just about 30 days, in the morning." With that, the transcript ends.

It is evident that the conference was held, as scheduled. No settlement was forthcoming and, on May 2, 1991, nearly one-and-one-half years after the jury rendered its verdict, plaintiffs submitted a motion. It sought an order setting aside the verdict on the issue of damages only or, in the alternative, directing that judgment be awarded to plaintiff for the full amount of the jury's verdict. Supreme Court dismissed the application as untimely, directing that the third- and fourth-party actions, counterclaims and cross-claims be dismissed, with prejudice.

On this appeal, plaintiffs contend that it was "patently improper" for the Trial Justice to "undirect" the verdict on liability. With respect to the evidence tending to contradict plaintiff's version of events, they contend that their trial counsel "did object strenuously to the reference to the hospital record", which indicated that plaintiff Angelo Pioli had fallen from a "steel girder" or "beam" and not as the result of collapsing scaffolding.

At issue is not whether grounds exist which might warrant a new trial, but whether there is any erroneous ruling that is subject to review by this Court so as to permit an examination of the grounds asserted on appeal. The transcript of the proceedings reveals that the hospital record was admitted into evidence on consent of all counsel. In view of the course of trial at that juncture, the court having directed a verdict in favor of plaintiffs as to liability, there was no reason to object to admission of the hospital record or to move that it be expurgated. However, neither can it be said that the admission of the hospital record into evidence was erroneous in view of counsel's consent.

It was only when the court treated the directed verdict as a nullity that this evidence became material to plaintiffs. An objection was raised to a reference to the hospital record in the course of summation on the issue of liability by defendants' counsel. The court ruled that the statements objected to could be read to the jurors as admissions by Angelo Pioli regarding the cause of his fall. Irrespective of the legal basis for this ruling, in the absence of testimony from the person recording the asserted admission, the hospital record was already in evidence. Therefore, the jury was free to consider it

in reaching a verdict, and counsel could not be prevented from making reference to it *(Barzaghi v Maislin Transp.,* 115 AD2d 679, 687; Richardson, Evidence § 207 [Prince 10th ed]).

The withdrawal of the directed verdict in plaintiffs' favor on the issue of liability is another matter. Plaintiffs' counsel was justified in regarding the determination of defendants' liability as law of the case and in pursuing a trial strategy formulated in reliance on this ruling. Supreme Court's implicit reversal in adopting the jury's finding as to the cause of the accident was highly prejudicial to plaintiffs. However, Supreme Court immediately acknowledged the inconsistency and specifically invited counsel to move for a mistrial.

Plaintiffs' attorney did not avail himself of the opportunity presented to him by the court. To the contrary, as he had done in connection with the jury verdict on damages, counsel indicated that he would make a motion after trial. When the motion was ultimately submitted, plaintiffs did not ask for a mistrial but instead sought a directed verdict, either awarding them the full amount of damages determined by the jury or, in the alternative, setting aside the verdict as to damages only. Having failed to timely submit the anticipated motion after trial, plaintiffs are hardly in a position to complain that the court did not decide any issues they might have advanced upon the motion in their favor.

It is clear from the record before this Court that counsel for plaintiffs and counsel for defendants reserved their arguments with respect to both liability and the adequacy of damages for post-trial motions. While this Court has not seen fit to construe the time limitation of CPLR 4405 strictly *(Matter of Commissioner of Welfare v Wendtland,* 25 AD2d 640; *see also, Brown v Two Exch. Plaza Partners,* 146 AD2d 129, *appeal dismissed* 74 NY2d 793), by no means can it be said that Supreme Court abused its discretion in declining to entertain a motion made nearly one-and-a-half years after the jury returned its verdict. Concur—Murphy, P. J., Kupferman, Ross and Rubin, JJ.