■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD J. WHITE, Appellant. [621 NYS2d 728] —Mikoll, J. P. Appeal from a judgment of the County Court of Madison County (O'Brien, III, J.), rendered May 21, 1993, upon a verdict convicting defendant of the crime of rape in the third degree.

In April 1991, after a 15-year-old student fainted at school, a physical examination revealed that she was pregnant. She was subsequently interviewed by the State Police and reported that defendant, for whom she had done babysitting, had raped her in February 1991. Defendant was thereafter arrested and charged with rape in the third degree (statutory rape). Defendant requested a paternity test involving DNA analysis and contributed samples of his blood which, along with samples of the victim's blood and the remains of the victim's aborted pregnancy, were submitted to Cellmark Diagnostics in Maryland for DNA testing and analysis. The DNA test results indicated that defendant was the probable father of the aborted fetus. The People then informed defendant that the DNA testing had been completed and the matter was ready to proceed.

Defendant was thereafter charged in a three-count indictment with the crimes of rape in the first degree, rape in the third degree and endangering the welfare of a child. A superseding indictment was later lodged charging the same crimes. Subsequently defendant filed motions seeking omnibus relief, after which County Court, *inter alia,* conditionally permitted admission of the results of the DNA testing. Trial of defendant before a jury ended in a verdict finding defendant not guilty of rape in the first degree but guilty of rape in the third degree. County Court had previously dismissed the charge of endangering the welfare of a child. Subsequently, defendant was sentenced to 1⅓ to 4 years' imprisonment.

On appeal defendant claims that County Court erred (1) in

admitting into evidence the DNA test results, (2) in denying defendant's request for certain *Rosario* material, (3) in allowing the fetal remains into evidence and to be placed before the jury, (4) in denying defendant's CPL 30.30 speedy trial motion, (5) in denying defendant's request to rule Penal Law § 130.25 unconstitutional based on age, and (6) in imposing a harsh and excessive sentence.

In challenging the DNA test results, defendant asserts that Cellmark's determination of the probability that defendant was the father of the aborted fetus was based upon an invalid assumption, namely, that certain genetic markers were contributed by the father and not the mother. Defendant also attacks the standards utilized by Cellmark in determining whether a match occurred between defendant and the fetus and the statistical analysis of the evidence in determining the probability of paternity. Lastly, defendant urges that the People did not sufficiently establish that Cellmark followed proper procedures or establish a proper foundation for the admission of the tested matter.

DNA profiling evidence has been ruled admissible in New York *(see, People v Wesley,* 83 NY2d 417). "In determining whether the DNA profiling evidence was properly admissible, attention must focus on the acceptance of such evidence as reliable by the relevant scientific community. The long-recognized rule of *Frye v United States* [293 F 1013] is that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has 'gained general acceptance' in its specified field" *(People v Wesley, supra,* at 422). The issues of a proper foundation and of the adequacy of laboratory procedures were not before the court in *People v Wesley (supra,* at 422).

The proof presented by the People established that the technique used is the "restriction fragment length polymorphism" (hereinafter RFLP) or "southern blotting" technique, involving isolation of the DNA, chemical splitting of the DNA and the use of genetic probes which bind with the separated DNA at specific areas. As the probes contain a radioactive marker, these areas show a band when the DNA is placed on an X-ray sheet, creating what is termed an autoradiograph or autorad. The banding patterns are then matched with an unknown sample in most forensic identification cases. However, here the DNA banding pattern was matched against the banding pattern of the suspected maternal and paternal DNA and, based upon the matches, a statistical analysis arrived at the probability of parenthood. Defendant questions only the

correctness of certain assumptions made by Cellmark employees in construing the test results and matching the fetal DNA to that of defendant.

Analysis of the RFLP test results involving two of the probes used showed some ambiguity as to the autorads produced for probes g3 and MS31. Visual viewing of the bands produced by the fetus, the victim and defendant could not determine, without considering any other evidence, which band was paternal and which was maternal. However, a Cellmark scientist testified that analysis of all the test results led to the conclusion that the bands of the fetal material in probe MS31 had "migrated" downward, and that consideration of this fact led to the conclusion that the band in question was of paternal origin, resulting in a match with defendant. As to probe g3, consideration of other probe results also led to the conclusion that a match existed.

Defense witnesses presented contrary evidence concerning the reliability of the methodology employed. County Court determined that the People's witnesses were more credible than defendant's in that they were more closely associated with the field of forensic DNA identification while defendant's witnesses were associated with academic research. County Court also based its conclusions upon the demeanor of the defense witnesses, which indicated to the court that they were less informed concerning the techniques and analysis applied in forensic DNA identification.

Defendant's argument that there was not sufficient evidence that reliable protocol had been followed in this case must fail. There was adequate expert evidence presented at the *Frye* hearing and at trial that Cellmark procedures were followed. Further, the parties stipulated at the *Frye* hearing that the Cellmark procedures were followed and were scientifically acceptable.

Defendant also contends that because Cellmark was not licensed by New York to conduct DNA paternity tests in the State, its evidence of the tests and test results should have been excluded. There was no requirement at the time of the tests that Cellmark be licensed to conduct DNA testing and the contention is thus rejected.

We reject defendant's argument that County Court erred in denying his motion to dismiss the indictment based on CPL 30.30 because the first indictment was jurisdictionally defective and the People were not ready for trial while that indictment was pending. The six-month readiness period un-

der CPL 30.30 began to run at the time of the return of the first indictment *(see, People v Sinistaj,* 67 NY2d 236, 237). However, that time is not automatically chargeable to the People *(see, supra; People v Kanter,* 173 AD2d 560, *lv denied* 78 NY2d 1078). The People's evidence revealed that the time chargeable to the People did not exceed the six-month period *(see, People v Hughes,* 180 AD2d 908, *lv denied* 80 NY2d 1027; *People v Traficante,* 143 AD2d 443) and defendant offered no evidence on the issue. The period during which defendant sought DNA testing and the time the testing was conducted, from April 25, 1991 to July 15, 1991, was excludable from the six-month period as an adjournment requested by defendant *(see, People v Kopciowski,* 68 NY2d 615; *People v Meierdiercks,* 68 NY2d 613). Examination of the record indicates that only 47 days were chargeable to the People.

Defendant's *Rosario (see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866) violation argument, that the People's failure to timely furnish copies of a forensic log book and of computer information pertaining to testing requires reversal, is rejected. The log book material was shown to be duplicative of previously disclosed information and need not have been produced *(see, People v Ranghelle,* 69 NY2d 56). The computer information was not relevant to this case.

Defendant claims that certain protocol information was not supplied by the People until after the People's witness had testified. It appears that the material may not be discoverable *(see, Matter of Constantine v Leto,* 157 AD2d 376, *affd* 77 NY2d 975). In any event, it was found by County Court not to have been requested by defendant. Moreover, the materials were provided in time for meaningful cross-examination and County Court offered the defense time to examine the materials; thus, there is no reversible error *(see, People v Ranghelle, supra; People v Clark,* 194 AD2d 868, *lv denied* 82 NY2d 752).

Defendant's reliance on *People v Banch* (80 NY2d 610) as support for his argument that the failure to turn over this material at the pretrial hearings is reversible error requiring new hearings is not well founded. The protocol was not requested and the computer information was discoverable. Further, the People were not required to provide the forensic log book at the *Frye* hearing. That hearing concerned only the reliability of the DNA testing procedures in general and as performed by Cellmark and not with foundational matters, such as chain of custody, to which the log book was relevant *(see, People v Wesley,* 83 NY2d 417, 422, *supra).* Thus, the log

book did not relate to the subject matter of testimony at the hearing (see, CPL 240.44).

Defendant's assertion that introduction into evidence of tissue from the remains of the victim's aborted fetus was reversible error because the exhibits were unnecessarily gruesome and there was no proper chain of custody established is without merit. Where, as here, circumstances provide reasonable assurance of the unchanged condition and identity of the item, failure to establish a complete chain of custody is excusable (see, People v Julian, 41 NY2d 340, 342-343; People v Rivera, 184 AD2d 153, 156). Introduction of the evidence complained of was also not reversible error because of the gruesome nature of the fetal remains. Such evidence is admissible at the discretion of the trial court if relevant to an issue at trial (see, People v Stevens, 76 NY2d 833; People v Pobliner, 32 NY2d 356, cert denied 416 US 905). The fetal material was introduced to establish the chain of custody relating to the admissibility of the DNA evidence and was, thus, relevant. Any material not used for the DNA test was merely cumulative to that already admitted and was not designed to inflame the passions of the jury.

Defendant's contention that Penal Law § 130.25 is unconstitutional because it subjects adults over the age of 21 to punishment under the statutes but not adults between 18 and 21 years of age lacks merit. The distinction as to age in the instant case is rational and serves a legitimate State interest in the imposition of sanctions based on differences in the maturity of persons of adult age and younger persons (see, Diamond v Cuomo, 70 NY2d 338, appeal dismissed. 486 US 1028; People v Whidden, 51 NY2d 457, 461, appeal dismissed 454 US 803; see also, People v Dozier, 72 AD2d 478, 484, affd 52 NY2d 781).

Lastly, defendant's claims that the sentence imposed is harsh and excessive and that County Court was biased against him and punished him for exercising his right to proceed to trial are rejected. The record does not support defendant's contention that the court was biased against him or vindictive toward him for refusing a plea offer (see, People v Tunstall, 197 AD2d 791, 793, lv denied 83 NY2d 811; People v Simon, 180 AD2d 866, 867, lv denied 80 NY2d 838). Further, upon this record we see no reason to disturb the sentence imposed by County Court (see, People v Whitman, 202 AD2d 871, lv denied 83 NY2d 972; People v Groves, 157 AD2d 970, lv denied 75 NY2d 919).

We have considered defendant's other arguments for reversal and find them without merit.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Madison County for further proceedings pursuant to CPL 460.50 (5).