OPINION OF THE COURT
Donald J. Mark, J.
The defendant was charged with the crimes of rape in the first degree and sexual abuse in the first degree as the result of the rape of a comatose woman after which she became *271 pregnant and gave birth. This was reportedly the first such phenomenon in medical history, and as such it attracted massive publicity. There was no direct evidence of these crimes available, so the People were forced to rely upon circumstantial evidence. This evidence consisted primarily of DNA expert testimony to the effect that the defendant was incontrovertibly the father of the child.[1]
At the trial, after laying a proper foundation, the People offered into evidence two photographs, one of the mother and the child taken shortly after birth, and the other of the child taken one week before trial. The defendant is an African-American and the mother is Caucasian, and the photographs of the baby demonstrated that he is biracial. The defense objected to the introduction of such photos, claiming that photographs to show resemblance are inadmissible. The prosecution grounded admissibility upon the fact that the DNA statistics were based upon a database of the African-American male population. The defense countered that medical testimony could achieve the same result.
"The general rule is * * * photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.’ They should be excluded 'only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant’ ” (People v Wood, 79 NY2d 958, 960).
The defense was correct that photographs of the child are normally not admissible to establish paternity, since evidence tending to show a resemblance between the child and the alleged father is neither accurate nor reliable (Matter of Commissioner of Welfare of City of N. Y. v Leroy C., 45 AD2d 963; Bilkovic v Loeb, 156 App Div 719; People v Diaz, 111 Misc 2d 1083; Matter of Theresa J. v Troy M., 89 Misc 2d 909; Matter of Diaz-Albertini, 153 NYS2d 261, affd 2 AD2d 671; Matter of Tim, 6 Misc 2d 47, affd 8 AD2d 720; Matter of McGerry, 75 Misc 98; see, Matter of Pamela WW. v Ervin XX., 191 AD2d 796, lv denied 81 NY2d 711; Department of Public Welfare v Hamilton, 282 App Div 1025).[2]
However, the prosecution did not seek to admit these photographs to show the resemblance, if any, between the child *272 and the defendant, so the defense’s reliance upon that line of cases was misplaced. In addition, a photograph which is relevant on one issue should not be excluded because it is inadmissible upon some other issue (Matter of Theresa J. v Troy M., supra, at 910 [photograph of the alleged father holding the child in the mother’s apartment admitted to impeach the alleged father’s testimony];[3] see, Matter of Espin v Pierce, 85 AD2d 503 [five photographs taken by the mother showing the alleged father with the baby admitted to show his continual relationship with the mother after the child’s birth]).
These photographs were received into evidence for the limited purpose of demonstrating to the jury that the child was of African-American and Caucasian lineage (see, Department of Public Welfare v Hamilton, supra), and that this in turn furnished the basis for the reference to the African-American male population database and the conclusion therefrom that the defendant was the child’s father (see, People v White, 211 AD2d 982, lv denied 85 NY2d 944). While medical evidence on this issue might have sufficed (see, Department of Public Welfare v Hamilton, supra), photographic evidence is probably more accurate than the testimony of a witness describing biracial characteristics (People v Webster, 139 NY 73, 83).[4] In addition, the photographs tended to prove a disputed issue and their sole purpose was not to arouse the emotions of the jury and to prejudice the defendant (People v Wood, supra).
Although the two photographs were admitted into evidence, only the photograph of the mother and the child was permitted to be examined by the jury.[5] In that photograph the image of the baby was smaller than the image of the baby in the second photograph, so the potential for prejudice was minimized. Since the defense objected to a proposed instruction that the photographs could not be considered as evidence of *273 resemblance (People v Stone, 225 AD2d 1067, 1068), that particular photograph sufficed for the prosecution’s purpose and neutralized the defense’s concern.

. The odds quoted were an astronomical 680,000,000 to 1.

. For the decisions of other States reaching a contrary conclusion, see Prince, Richardson on Evidence § 4-208 (Farrell 11th ed).

. The defense attempted to distinguish this case because that court noted that there was no jury to be prejudiced by the photograph’s receipt.

. The exact quote is "Witnesses who had known the deceased might have been permitted to describe him as accurately as the imperfections of human speech would allow, and the evidence is no more objectionable when his form and features are delineated by means of the photographer’s art” (People v Webster, supra, at 83).

. An admitted exhibit may be withheld from the jury (CPL 310.20 [1]; People v Damiano, 87 NY2d 477, 487; People v Isaac, 214 AD2d 749, 750, lv denied 86 NY2d 782).