OPINION OF THE COURT
Frank J. LaBuda, J.
On July 8, 1999 the defendant was charged by indictment *691 No. 115-99 with two counts of murder in the first degree, three counts of murder in the second degree, four counts of burglary in the first degree, two counts of criminal possession of a weapon, three counts of attempted murder in the first degree, one count of attempted murder in the second degree and three counts of assault in the first degree.
The victim and her 12 year old were repeatedly stabbed and slashed by the defendant. Numerous blood samples were obtained from the victim’s bedroom and house as well as a blood trail to the defendant’s house where blood was still evident.
The defendant moves this court to suppress the results from the prosecution’s DNA testing herein or, in the alternative, to conduct a Frye hearing.
The People oppose said motion arguing that DNA profiling is an established, recognized and accepted procedure in the scientific community and is accepted as reliable by trial courts in the State of New York. Thus, neither suppression nor a Frye hearing should be ordered by the court.
The defense argues that if a scientific procedure is generally accepted in the scientific community and reliable, and, thus, admissible under Frye, the use of new technology in the use of protocols or the use of new materials used to conduct the accepted procedure renders the procedure itself inadmissible under Frye until or unless said protocols or materials used are reliable and generally accepted in the scientific community.
The defense concedes that DNA profiling is admissible in courts in New York State as it has been found to be reliable and a generally accepted scientific test but they argue that the protocols or materials used in the within DNA testing are not reliable or generally accepted in the scientific community.
The issue herein is: Does a defendant have a right to a Frye hearing when otherwise admissible evidence emanates from a scientific test, which test has been previously accepted under Frye, where later protocols or materials used in conducting said scientific test are allegedly unreliable and not generally accepted in the scientific community?
In 1923, the Court of Appeals of the District of Columbia stated: “Just when a scientific principle or discovery crosses the line between experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will *692 go a long way in admitting expert testimony deduced from well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.” (Frye v United States, 293 F 1013, 1014 [DC 1923].)
Accordingly, the Court of Appeals of the State of New York has approved of radar in speed detection (People v Magri, 3 NY2d 562 [1958]), bite mark identification (People v Middleton, 54 NY2d 42 [1981]) and DNA profiling (People v Wesley, 83 NY2d 417 [1994]) since they are reliable and generally accepted within the scientific community.
To be admissible at trial, scientific evidence must be reliable and generally accepted by the scientific community either by a prior court finding or a finding by the trial court (after a Frye hearing) and have a proper foundation laid at trial. (People v Wesley, supra.)
Once a trial court has determined that scientific evidence is admissible the jury is then left to hear the testimony and determine the weight of the evidence such as infirmities as to the collection or analysis of data. (People v Wesley, supra.)
Ancillary issues, such as chain of custody or collection techniques, speak to the weight of the evidence not the admissibility and is an issue for the jury to determine. (People v Moore, 194 AD2d 32 [3d Dept 1993]; see also People v White, 211 AD2d 982 [3d Dept 1995].)
The question herein is whether the defense is raising an ancillary issue which requires the jury to determine the weight given the evidence or whether the mediums used by the New York State Police laboratory in its testing methodology goes directly to the Frye issues of general acceptability of the scientific community and reliability of the tests.
The defense concedes that DNA profiling is judicially recognized as reliable and generally accepted in the scientific community and is, thus, admissible. Here they argue, however, that the particular methodology used, specifically that an ampFISTR Blue DNA typing kit and an ampFISTR Green DNA typing kit, have not been shown to be reliable through sufficient validation studies and the DNA profiling herein is tainted, unreliable and will not pass Frye scrutiny.
The People simply argue that DNA profiling has been accepted under Frye, and therefore the defense is not entitled to either suppression or a Frye hearing. The People do not specifically address the defense argument that use of unreliable test *693 ing material causes the DNA testing to be tainted and the results should be suppressed or the court should conduct a Frye hearing to determine reliability.
The Frye test requires a judicial determination that novel scientific evidence is reliable and that the techniques employed, when properly performed, generate reliable results and are generally accepted in the scientific community (People v Wesley, supra).
However, infirmities in the collection or analysis of the evidence, not affecting its scientific trustworthiness, go to the weight of the evidence and are assessed by the jury. (People v Wesley, supra, at 436 [Kaye, Ch. J., concurring].)
The key is accepted scientific trustworthiness.
The novel scientific evidence and the methodology used to acquire test results (protocols, materials, mediums, etc.) go to the trustworthiness of the evidence and are determined by the court after a Frye hearing.
In the present case the issue is not the scientific/judicial acceptance of DNA analysis, but the judicially unreviewed DNA testing procedure used by the New York State Police laboratory.
The prosecution cites no Frye approval of the within testing methodology. The defendant claims it is unreliable and the defendant is entitled to have the court pass on its scientific trustworthiness before its admissibility to a jury.
The People untenably assert that the defense has not sufficiently alleged factors to warrant suppression or a Frye hearing.
The defense has alleged reasonable factors which go to the heart of reliability of the DNA testing procedures herein.
Issues such as chain of custody or collection methods are ancillary to trustworthiness and, therefore, go to the weight of the evidence, not the admissibility thereof, and are properly left to the jury.
The defense argues that the methodology herein used certain testing mediums which were not generally accepted in the scientific community and are not reliable. Said argument goes to the issue of trustworthiness and must be determined by the court in a Frye hearing.
The question of reliability is fundamental to whether the DNA testing herein is admissible at trial and a pretrial hearing to evaluate admissibility and to avoid the all but impossible task of requiring the jury to first consider and then ignore *694 the evidence if found unreliable is appropriate. (People v Nieves, 143 Misc 2d 734 [Crim Ct, NY County 1989].)
The People have the burden of proof at a Frye hearing. However, since DNA profiling has already been accepted as reliable and the defense is raising an unreliable result, the burden of proof shifts to the defense. (.People v Nieves, supra.)
After reviewing written arguments by the defendant and the People and after oral argument and after due deliberation had herein, it is ordered that the defendant’s motion to suppress all DNA evidence or, in the alternative, to compel a pretrial suppression hearing is granted to the extent that this court shall conduct a limited Frye hearing, and it is further ordered that said Frye hearing shall be limited to the reliability and general acceptability in the scientific community of the use of ampFISTR Green typing kit and ampFISTR Blue typing kit in DNA profiling methodology used by the New York State Police laboratory in the within DNA testing, and it is further ordered that the burden of proof at this hearing shall be on the defense to prove grounds for suppression by a preponderance of the evidence.