(September 18, 1986)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES LEE BENSON, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered April 18, 1984, upon a verdict convicting defendant of the crime of rape in the first degree.

Defendant (a) maintains that the trial court committed reversible error by discharging two jurors in violation of CPL 270.35, thus denying him the right guaranteed by both the US Constitution and NY Constitution (art I, § 2) to a trial by a particular jury in whose selection he has had a voice, (b) impugns the court's *Sandoval* ruling, and (c) challenges the verdict as being repugnant and inconsistent.

After the jury was selected and sworn, but prior to opening statements, two jurors apprised the trial court of their separate concerns about sitting as jurors. The foreperson advised that she had attended training sessions offered by the Albany County rape crisis center and just that morning had conferred with the center director, who was working with the alleged victim and had been in the courtroom with her; although this juror was positive she could still be impartial, she preferred to be excused. The second juror, Laura Davis, informed the court that during the preceding evening she discovered that she was related to the alleged victim by marriage—they were stepsisters-in-law. Furthermore, they apparently knew one another in high school; at the time the victim was said to be known to her as Connie Stevens. Davis indicated that she probably could be evenhanded, but believed it would not be fair for her to act as a juror; she too preferred to be excused. The court and counsel questioned the jurors, following which defense counsel's request to have both jurors excused was joined in by the prosecutor and granted by the court. Thereafter, in the course of further discussions with the victim, the prosecutor learned that she had never been known as Connie Stevens and he so informed defense counsel. The latter, believing Davis had mistaken the victim for another, sought to withdraw his earlier consent to her discharge and when that request was denied, unsuccessfully moved for a mistrial. The two jurors were thereupon dismissed and replaced by alternates.

As defendant consented to the foreperson's removal and registered no objection to her being substituted, the right to appellate review of the propriety of her discharge has not been preserved (see, CPL 470.05 [2]). As for Davis, since new information with respect to her came to defendant's attention only after he had solicited her removal and he endeavored with alacrity to have the trial court reconsider his earlier objection to her sitting, he has preserved the right to appeal this issue.

CPL 270.35 provides that a juror may be discharged when, *inter alia,* the trial court finds from facts unknown at the time of jury selection that the juror is "grossly unqualified" to serve in the case. A juror is grossly unqualified to serve when "it becomes obvious that [the] juror possesses a state of mind which would prevent the rendering of an impartial verdict" *(People v West,* 92 AD2d 620, 622 [Mahoney, P. J., dissenting], *revd on dissenting opn below* 62 NY2d 708). One who "unhesitatingly" states that he or she could be "fully fair and fully impartial between the parties" is *not* grossly unqualified to serve *(id.,* p 622 [Mahoney, P. J., dissenting]). But that is not the circumstance presented here.

The record contains several statements by Davis expressing uncertainty, because of her familial ties to defendant, about her capacity to render an objective verdict. In one such instance, responding to the trial court's questioning as to whether she could indeed be fairminded, she declared: "I would think I wouldn't but I honestly couldn't say if I would or wouldn't." As Davis could not "unhesitatingly" confirm her ability to render an unbiased verdict, the court properly found her "grossly unqualified" *(see, People v Galvin,* 112 AD2d 1090, 1091).

A *Sandoval* hearing disclosed that defendant had been convicted of assault in the third degree in 1973, 1976 and 1983 and that these misdemeanor convictions stemmed from incidents involving his then live-in girlfriend. Given the similarity of the crime charged and the prior convictions, the trial court ruled that the prosecutor could ask if defendant had been convicted of the three misdemeanors but would not be permitted to inquire into the nature of the convictions or their underlying acts. Resort to the *"Sandoval* compromise" was entirely appropriate; not only was the risk of unfair prejudice to defendant thereby minimized, but the probative worth of this impeachment technique was conserved *(see, People v Sandoval,* 34 NY2d 371, 377; *see also, People v Pavao,* 59 NY2d 282, 292; *People v Lawson,* 112 AD2d 457, 461).

Arguably no prejudice accrued to defendant by the trial court's allowing inquiry to be made of the 1973 conviction, despite its remoteness. Reference to this conviction was tolerated not for an obviously improper purpose *(see, People v Young,* 109 AD2d 1015; *People v Cooke,* 101 AD2d 983), but to show a consistent pattern of activity potentially bearing adversely on defendant's credibility. Moreover, even if permitting reference to the 1973 conviction was erroneous, it was harmless error, for doing so would not have, as defendant charges, unfairly prevented him from testifying. There being no basis for disallowing use of the 1976 and 1983 convictions, we are unpersuaded that the incremental prejudice, if any, proceeding from allusion to the 1973 conviction would have been of such magnitude as to preclude defendant from testifying.

Nor is there any substance to the claim that the verdict convicting defendant of rape in the first degree and acquitting him of assault in the second degree is inconsistent and repugnant. Examination of this assertion is foreclosed by reason of defendant's failure to object to the verdict until after the jury was discharged, when it was no longer possible to remedy any defect by resubmission of the verdict to the jury for its reconsideration *(see, People v Alfaro,* 66 NY2d 985, 987).

Nevertheless, were we to reach the merits of this argument, we would reject it. A verdict is repugnant or inconsistent (the terms have been used interchangeably) "only * * * where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered" *(People v Tucker,* 55 NY2d 1, 7). Rape in the first degree is committed when the actor employs physical force or threats of physical force which places the victim in fear of immediate death or serious physical injury (Penal Law § 130.35 [1]; § 130.00 [8]). Assault in the second degree occurs when "[w]ith *intent to cause physical injury* to another * * * he causes such injury to such person * * * by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]; emphasis supplied). Because the acquittal on the assault count was not dispositive as to essential elements of the rape count, the verdict was not illogical. There was testimony from which the jury could have concluded that, although defendant raped the victim, he did not have the statutory intention required to warrant conviction for assault in the second degree, i.e., of causing her physical injury by means of a deadly weapon or dangerous instrument. Supportive of this conclusion, and that the jury

acted consistently, is the victim's testimony that while in the bathroom and before entering the bedroom where the rape took place, *she* grabbed the knife from defendant and was cut in the ensuing struggle.

Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.