(April 17, 1997)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT J. HAGIN, Appellant. [657 NYS2d 105] —Mercure, J. Appeal from a judgment of the County Court of Tompkins County (Friedlander, J.), rendered April 23, 1993, upon a verdict convicting defendant of the crimes of driving while intoxicated (two counts) and aggravated unlicensed operation of a motor vehicle in the first degree.

On December 4, 1991, the State Police responded to a call concerning a car that had been driven off the road in the Town of Newfield, Tompkins County. State Trooper Robert Goehner arrived on the scene at approximately 8:30 P.M. to find defendant's abandoned car, with its front end in a ditch. There was blood in, on and around the car. Goehner and another State Trooper then went to defendant's home in the City of Ithaca. As the two approached the residence, they saw blood along the sidewalk and in front of the house. The woman who answered the door at defendant's home acknowledged that the person involved in the accident was at the house, taking a shower. When defendant emerged from the bathroom, he was holding a towel over his face. When he removed the towel,

blood spurted from a wound above the bridge of his nose. While the Troopers were arranging to have defendant transported to the hospital, defendant stated that Butch (determined to be Warren Miller) had been driving his vehicle at the time of the accident.

Defendant was taken to the hospital in an ambulance, arriving at approximately 9:50 P.M. At the hospital, Goehner met and interviewed Miller, who had also been transported to the hospital because of injuries he received in the accident. Miller, who did not appear to have been drinking, explained to Goehner that defendant had been drinking all day and was driving the car at the time of the accident. Goehner then arrested defendant for driving while intoxicated and read him the *Miranda* warnings. Defendant agreed to discuss the accident and consented to a blood test, administered at Goehner's request by a registered nurse who was on duty at the hospital. The nurse drew two samples of defendant's blood and placed them in a test kit. Goehner then sealed and set forth the date and time (10:10 P.M.) on the kit and he and the nurse each signed the paperwork on the inside of the kit and initialed the seals. Subsequent gas chromatography testing showed defendant's blood alcohol level to be 0.22% at the time the samples were taken.

Defendant was indicted for aggravated unlicensed operation of a motor vehicle in the first degree, driving while intoxicated per se and common-law driving while intoxicated, as a felony. Following a jury trial, defendant was convicted of all three counts and sentenced to concurrent prison terms aggregating 1 1/3 to 4 years. Defendant now appeals, advancing numerous assertions of error, all of which are found to be lacking in merit. We accordingly affirm.

Initially, we are not persuaded by defendant's arguments concerning the admissibility of his blood-alcohol test results. First, in view of the express provision of Vehicle and Traffic Law § 1194 (4) (a) (1) (i) that a registered nurse may withdraw blood for the purpose of determining the alcoholic content therein and the fact that the withdrawal of blood for that purpose was by no means necessary for defendant's treatment (*see, Desai v Blue Shield*, 146 AD2d 264, 265-266), defendant may not utilize the nurse-patient privilege as a bar to admission of the blood test result. Second, we are unconvinced that use of the blood kit beyond its labeled expiration date or defendant's speculation that the blood sample may have been tampered with provide any basis for rejection of the test results. Notably, the People's toxicologist, Donald Loomis, was

able to determine that the vials had not malfunctioned and that their seals remained intact because of the existence of a vacuum at the time of his testing. Under the circumstances, we conclude that Loomis' trial testimony provided "reasonable assurance of the identity and unchanged condition of the evidence" (*People v Slater*, 166 AD2d 828, 830, *lv denied* 76 NY2d 1024). Nor are we persuaded that the gas chromatograph test or Loomis' method of "back calculation" to estimate defendant's blood-alcohol level to be 0.26% at the time he drove his vehicle were flawed or in any way incompetent or otherwise inadmissible (*see, People v Stiffler*, 237 AD2d 753; *People v White*, 211 AD2d 982, 983-984, *lv denied* 85 NY2d 944). Finally, there being no evidence that records created in connection with the periodic testing of the gas chromatograph were ever available to the prosecution, we are not persuaded that there was any *Rosario* violation in that connection (*see, People v Gillis*, 220 AD2d 802, 805-806, *lv denied* 87 NY2d 921).

Turning briefly to certain of defendant's other assertions, we reject the contention that County Court erred in refusing to receive testimony concerning the operability of the passenger door of defendant's vehicle following the crash, offered for the purpose of contradicting Miller's testimony that he exited the vehicle by that door. The proffered testimony was properly rejected as extrinsic evidence on a collateral matter offered solely to impeach a witness's credibility (*see, People v Alvino*, 71 NY2d 233, 247-248). We also conclude that County Court did not abuse its discretion in fashioning a *Sandoval* compromise permitting defendant to be cross-examined concerning several of his prior convictions of driving while intoxicated by reference to the fact of conviction of three misdemeanors and three felonies without reference to the nature of the crimes (*see, People v Walker*, 83 NY2d 455, 459; *People v Miller*, 217 AD2d 810, *lv denied* 86 NY2d 798). Defendant's remaining contentions do not warrant discussion.

Cardona, P. J., Casey, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed.