[965 NE2d 232, 942 NYS2d 5]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN
SMITH, Appellant.

Argued January 10, 2012; decided February 14, 2012

## POINTS OF COUNSEL

*Office of the Appellate Defender*, New York City (*Richard M. Greenberg* of counsel), for appellant. I. The trial court's *Sandoval* ruling, which would have allowed the prosecutor to cross-examine Kevin Smith about the nature of three prior felony drug convictions, was imbalanced and overly prejudicial and an abuse of discretion, where Mr. Smith was accused of virtually identical drug felonies in this case, and where the ruling effectively precluded him from testifying at trial to his version of the facts as he did at the pretrial hearing. (*People v Sandoval*, 34 NY2d 371; *People v Carmack*, 52 AD2d 264, 44 NY2d 706;

*People v Bermudez*, 98 Misc 2d 704; *People v Hayes*, 97 NY2d 203; *People v Walker*, 83 NY2d 455; *People v Pavao*, 59 NY2d 282; *People v Harris*, 74 AD3d 984, 15 NY3d 920; *People v Vasquez*, 71 AD3d 1179; *People v Louisias*, 29 AD3d 1017; *People v Marquez*, 22 AD3d 388.) II. Kevin Smith was denied his constitutional right to counsel at trial when the court denied substitution of counsel despite the good cause shown by the complete breakdown in the attorney-client relationship which culminated in counsel refusing to represent Mr. Smith at sentencing. (*Gideon v Wainwright*, 372 US 335; *People v Sides*, 75 NY2d 822; *People v Branham*, 59 AD3d 244; *People v Rodriguez*, 46 AD3d 396; *People v Bryan*, 31 AD3d 295; *People v Linares*, 2 NY3d 507; *People v Medina*, 44 NY2d 199; *People v Arroyave*, 49 NY2d 264; *Hurrell-Harring v State of New York*, 15 NY3d 8; *People v Felder*, 47 NY2d 287.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Hilary Hassler* and *Mary C. Farrington* of counsel), for respondent. I. The trial court's *Sandoval* ruling, permitting inquiry into defendant's three prior convictions for drug offenses, without their underlying facts, was a proper exercise of discretion. (*People v Sandoval*, 34 NY2d 371; *People v Grant*, 7 NY3d 421; *People v Kello*, 96 NY2d 740; *People v Hawkins*, 11 NY3d 484; *People v Duffy*, 36 NY2d 258; *People v Betts*, 70 NY2d 289; *People v Casey*, 72 NY 393; *People v Hayes*, 97 NY2d 203; *People v Williams*, 56 NY2d 236; *People v Sorge*, 301 NY 198.) II. The trial court's denial of defendant's eve-of-trial request to replace his assigned counsel was proper. (*People v Sawyer*, 57 NY2d 12; *People v Linares*, 2 NY3d 507; *People v Medina*, 44 NY2d 199; *People v Porto*, 16 NY3d 93; *People v Sides*, 75 NY2d 822; *People v Arroyave*, 49 NY2d 264; *People v Mattiace*, 77 NY2d 269; *People v Tineo*, 64 NY2d 531; *People v Rodriguez*, 95 NY2d 497; *People v Nelson*, 7 NY3d 883.)

## OPINION OF THE COURT

JONES, J.

The issues before this Court are whether Supreme Court abused its discretion by denying defendant's request for the substitution of assigned counsel and by issuing a *Sandoval* ruling which permitted the prosecutor to refer to defendant's prior drug-related felony convictions by naming the specific crimes, should he choose to testify. We hold that it did not.

On April 25, 2007, defendant was arrested for the sale of cocaine after detectives, assigned to the surveillance of drug

activity in a particular area, observed defendant conduct two apparent drug transactions in front of a bar in Manhattan. The detectives first arrested the two individuals, who they allegedly saw give defendant money in exchange for drugs, and recovered crack cocaine from each of them. Upon defendant's arrest, they discovered additional drugs in his back pocket. Defendant was charged with two counts of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the fifth degree.

Prior to jury selection, defendant indicated that his former defense counsel "really botched up" and that he felt his present attorney was not "going to represent [him] to the best of his ability."* Initially, defendant expressed that he and his attorney disagreed about how to proceed with pretrial motions. More specifically, he complained that counsel did not follow his request to renew a motion to dismiss the indictment based upon the testifying officers' failure to state their prior experience and training before the grand jury. Counsel explained, however, that he indicated to defendant that the issue was preserved for appeal in the event that the motion court ruled incorrectly. According to defendant, he did "not feel comfort[able] going to . . . trial with this man." The court warned that it would not continue to assign defendant different attorneys. After noting that the case was ready for trial, the court advised defendant that counsel was an able, competent and experienced criminal attorney. Defense counsel explained his preparation for defendant's trial and that he had tried many observation sale cases. The court denied defendant's request for the substitution of assigned counsel. Defendant however did not accept the court's decision and continued to express that he did not want to go to trial with present counsel. The court further explained that it would not assign new counsel to him without a reason.

At the *Sandoval* hearing, the prosecutor sought to question defendant, if he chose to testify, concerning three prior felony drug convictions from 1994, 1995 and 2004, as well as a 2004 conviction for unlawfully carrying a gun. Defendant requested that the prosecution be restricted to referring to the convictions as felonies without indicating the offense. The trial court denied

---

* Defendant's first attorney had been substituted and replaced with the present trial counsel.

defendant's request, but limited the prosecutor's inquiry regarding the prior convictions to the type of crime, county and date of conviction. The court further advised that it would instruct the jury that the prior convictions are not evidence of defendant's guilt in the present case. Defendant testified during pretrial proceedings and gave a different account of the events, specifically denying the possession of any drugs. Defendant did not testify at trial.

Defendant was convicted, upon a jury verdict, of the crimes charged in the indictment. On appeal, defendant argued, among other things, that the trial court erred in denying his application for substitution of assigned counsel and its *Sandoval* ruling constituted an abuse of discretion.

The Appellate Division "unanimously modified, on the law, to the extent of vacating the sentence and remanding for resentencing, and otherwise affirmed" (75 AD3d 420, 420-421 [1st Dept 2010]). It held that "[d]efendant failed to demonstrate good cause for the assignment of substitute counsel" and that the trial "court properly exercised its discretion" in its *Sandoval* ruling (*id.* at 421). A Judge of this Court granted defendant leave to appeal, and we now affirm.

Criminal defendants are guaranteed the right to effective representation by counsel under the Federal and State Constitutions (*see* US Const 6th Amend; NY Const, art I, § 6; *see also People v Linares*, 2 NY3d 507 [2004]; *People v Baldi*, 54 NY2d 137 [1981]). Moreover, our Constitution guarantees indigent defendants the right to assigned counsel (*see People v Medina*, 44 NY2d 199 [1978]; *People v Koch*, 299 NY 378, 381 [1949]). It is well-settled that "[t]he legal assistance provided must be 'effective' " (*Medina*, 44 NY2d at 207). To ensure effective representation of assigned counsel, courts "must 'carefully evaluate serious complaints about counsel' " (*Linares*, 2 NY3d at 510, quoting *Medina*, 44 NY2d at 207). To that end, when a defendant requests the assignment of new counsel, provided "good cause" exists, "a court is well advised to effect [such] change" (*Medina*, 44 NY2d at 207). "Good cause determinations are necessarily case-specific and therefore fall within the discretion of the trial court" (*Linares*, 2 NY3d at 510).

In determining the existence of "good cause," a trial court must consider "whether present counsel is reasonably likely to afford a defendant effective assistance and whether the defendant has unduly delayed in seeking new assignment" (*Medina*,

44 NY2d at 208). This Court has observed that "a conflict of interest or other irreconcilable conflict with counsel" may be "good cause for a substitution" (*People v Sides*, 75 NY2d 822, 824 [1990] [the Court concluded that the trial court abused its discretion by failing to inquire into defendant's request for the assignment of substitute counsel]). However, the Court has also noted that courts have upheld refusal to assign substitute counsel where "tensions between client and counsel on the eve of trial were the precipitate of differences over strategy" or "where a defendant was guilty of delaying tactics" (*Medina*, 44 NY2d at 208 [citations omitted]).

Here, defendant failed to demonstrate that good cause for the substitution of assigned counsel existed. Supreme Court conducted an inquiry into defendant's request for new assigned counsel. The inquiry revealed that defendant did not approve of the representation counsel sought to provide him despite counsel detailing that he had considered defendant's motions, had prepared for trial and had tried numerous observation sale cases, which have similar factual allegations and issues as defendant's case. The court noted that counsel was competent and likely to provide effective representation; the case was ready for trial; and defendant provided "no reason" to substitute counsel for a second time. Against this factual setting, the trial court's denial of defendant's request for the substitution of assigned counsel was a proper exercise of discretion.

"Evidence of prior specific criminal, vicious or immoral conduct should be admitted if the nature of such conduct or the circumstances in which it occurred bear logically and reasonably on the issue of credibility" (*People v Sandoval*, 34 NY2d 371, 376 [1974]). A court may exclude the evidence entirely; "limit [the prosecution's] inquiry to the mere fact that there has been a prior conviction; it may limit inquiry to the existence and nature of the prior conviction; or it may permit examination into the facts and circumstances underlying the prior conviction" (*People v Hayes*, 97 NY2d 203, 208 [2002]). This determination, however, remains within the discretion of the trial court (*see id.* at 207).

It is important to note that the concerns observed by the *Sandoval* Court remain relevant. The Court recognized that the "cross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial" (*Sandoval*, 34 NY2d at 377). It stated,

"in the prosecution of drug charges, interrogation

as to prior narcotics convictions (unless proof thereof is independently admissible) may present a special risk of impermissible prejudice because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders . . .

"In weighing prejudice to the defendant's right to a fair trial, an important consideration may be the effect on the validity of the fact-finding process if the defendant does not testify out of fear of the impact of the impeachment testimony for reasons other than its direct effect on his credibility—as where the defendant would be the only available source of material testimony in support of his defense" (*id.* at 377-378).

Nonetheless, the *Hayes* Court, in a domestic violence case, concluded it is error to apply a fixed rule that requires trial courts to limit cross-examination "to the mere existence of defendant's prior convictions where prior crimes are similar to the pending charges" (97 NY2d at 208). Because this Court has been disinclined over the years to construct per se rules concerning the cross-examination of a defendant where prior convictions are similar to the pending charges, the discretion of the trial court regarding such determinations remains intact. We reiterate, however, that trial courts should take care in weighing "whether the prejudicial effect of impeachment testimony far outweighs the probative worth of the evidence on the issue of credibility" (*Sandoval*, 34 NY2d at 376).

Here, defendant, on trial for several drug charges, requested that the prosecutor's cross-examination of him be limited to the mere fact that his prior convictions were unspecified felonies. The trial court, instead, limited the prosecutor's potential inquiry to the name of the crime, county and date of conviction and also advised that it would instruct the jury that the prior convictions are not evidence of defendant's guilt. Although the concerns of *Sandoval* still exist and may have been implicated in this case, the court weighed appropriate concerns and limited the scope of cross-examination. Thus, pursuant to *Hayes*, no abuse of discretion is apparent.

Accordingly, the order of the Appellate Division should be affirmed.

PIGOTT, J. (concurring). In my view, Supreme Court abused its discretion in ruling that cross-examination of the defendant could include eliciting the Penal Law names of his prior convictions. However, I find the error in this case to be harmless and therefore concur in the result.

A criminal defendant who chooses to testify may be cross-examined regarding prior crimes and bad acts that bear on his credibility as a witness. However, under *People v Sandoval* (34 NY2d 371 [1974]), the trial court must strike a proper balance between the probative value of evidence of defendant's prior convictions or bad acts, with respect to his credibility, and the danger of prejudice that such evidence presents, measured both by the impact of such evidence on the jury and by the effect in discouraging the defendant from testifying (*id.* at 375). The *Sandoval* court expressly warned of the dangers of allowing cross-examination about the prior drug-related convictions of a defendant now accused of a drug crime.

> "[C]ross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility. Thus, in the prosecution of drug charges, interrogation as to prior narcotics convictions . . . may present a special risk of impermissible prejudice because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders. On the other hand, proof of prior convictions of perjury or other crimes of individual dishonesty should usually be admitted on trial of another similar charge, notwithstanding the risk of possible prejudice, because the very issue on which the offer is made is that of the veracity of the defendant as a witness in the case."
> (*Sandoval*, 34 NY2d at 377-378 [citation omitted].)

The present case presents exactly the unacceptable risk of prejudice that *Sandoval* warns against. Had defendant, facing multiple drug charges, testified, he would have been asked not whether he had committed felonies in 1994, 1995 and 2004, but whether his 1994 and 1995 convictions were for criminal sale of a controlled substance in the third degree,

and his 2004 convictions were for possession of cocaine with the intent to sell, possession of marihuana, and unlawfully carrying a gun. The jury, considering whether to convict him of, inter alia, criminal sale of a controlled substance in the third degree, would have heard that he had committed precisely the same crime before. The extraordinarily high risk of prejudice that results is justified, the majority apparently believes, on the basis that hearing this information would enable the jury to decide whether he was a credible witness. The majority condones this process, and thereby takes *Sandoval* to an extreme that the Judges who signed that opinion surely cannot have intended.

The majority ignores the fact that the principle underlying our decision in *Sandoval* was, and remains, that the mere fact that a defendant has previously been guilty of a felony itself casts doubt on his credibility. A defendant's prior crime evinces "a willingness or disposition . . . to place the advancement of his individual self-interest ahead of principle or of the interests of society" (*Sandoval*, 34 NY2d at 377). The particular *nature* of the defendant's prior crime usually adds nothing to the fact that, by breaking the law, he has been willing to further his own interests at the cost of others' interests and at the expense of ethical principles. (The exception is when the prior crime is one that necessarily involves individual dishonesty or untrustworthiness, such as theft, fraud, or bribery, etc.)

Moreover, in my view, where many crimes are concerned, there is often little practical difference between, on the one hand, allowing cross-examination as to the nature of prior convictions (i.e., their Penal Law names) but not their underlying facts, and, on the other hand, allowing cross-examination as to the nature of prior convictions *and* their underlying facts. When the crime with which defendant is charged involves sale of cocaine, a juror who is told that defendant was previously convicted of criminal sale of a controlled substance and possession of cocaine with the intent to sell does not need to be told any more of the underlying facts in order for there to be an unacceptably large risk that the evidence will have a "disproportionate and improper impact" (*Sandoval*, 34 NY2d at 376).

Having said this, I am aware that we have repeatedly "declined to prohibit cross-examination solely because of the similarity of prior acts to the crimes charged" (*People v Hayes*, 97 NY2d 203, 208 [2002]). Moreover, in principle I accept the

position that a defendant should "not [be] shielded from cross-examination merely because he or she specializes in one particular form of criminal conduct" (*People v Rivera*, 2 AD3d 543 [2d Dept 2003]). It might be unjust to bar cross-examination of defendants accused of drug crimes concerning their prior drug crimes, while allowing defendants accused of, say, burglaries or assaults to be cross-examined about their prior drug crimes. However, it is equally unjust to permit cross-examination of defendants accused of drug crimes concerning their prior drug crimes, as a matter of routine practice, without any true exercise of discretion balancing the probative and the prejudicial. And that, I believe, is what occurred in the present case. A *Sandoval* hearing "is of little value if the issue can be decided by the Trial Judge in his [or her] unfettered discretion. The irreducible minimum is that the determination be made on a reasoned basis, measuring propensity for conviction against relation to credibility" (*People v Pollock*, 50 NY2d 547, 551 [1980, Meyer, J., dissenting]).

It is important for trial courts to recognize that *Sandoval* allows for a straightforward method of restricting cross-examination that avoids risks of prejudice without giving unfair advantage to the "criminal specialist." In my view, *in general*, striking a balance between the probative value of the prior convictions and the risk of prejudice requires the trial court to permit cross-examination only as to the *existence* of prior convictions, not their Penal Law names ("nature") or underlying circumstances. (I would make an exception when the prior crimes are crimes of individual dishonesty, the nature of which is directly probative of credibility.) This balancing has long been called the "*Sandoval* compromise," though the term is sometimes used more generally. This approach prevents a defendant who has been convicted of serious crimes in the past from testifying at his trial while benefitting from the jury's assumption that he does not have a criminal record, and allows jurors to make rational inferences, about the likelihood of his lying at trial, from his lack of respect for society's rules of conduct. At the same time, it eliminates the great risk that jurors will make illicit inferences of guilt from propensity to a type of crime.

The "*Sandoval* compromise" was first put forward by Supreme Court, New York County, in a decision issued some five years after *Sandoval*.

"Simply put, the pure *Sandoval* compromise is permitting the prosecutor to ask the testifying defendant one question (or, perhaps, two where both pertinent previous felonies *and* misdemeanors are involved) with respect to all prior convictions and connected underlying and immoral acts. The question or questions can be phrased: 'Have you ever been convicted of a prior felony?' 'Have you previously been convicted of two (or three, as appropriate) felonies?' 'Have you (also) been convicted of a prior misdemeanor?' The precise language of the brief interrogation is, of course, dependent upon the type and number of prior convictions in each individual case. The compromise can also be allowed, as a matter of discretion, in conjunction with other nonprejudicial credibility inquiry, as the previous conduct of the defendant warrants. It can also be used with respect to some prior convictions, while permitting or barring cross-examination as to others.

"Concerning the pure *Sandoval* compromise, and presuming that the defendant gives the expected affirmative answers and does not voluntarily advance misleading or unwarranted claims or denials, this would be all of the cross-examination on that subject the prosecutor would be allowed." (*People v Bermudez*, 98 Misc 2d 704, 707-708 [Sup Ct 1979] [citations omitted].)

Since then, the *Sandoval* compromise has been used in numerous cases, and frequently applauded by the Appellate Division. The Third Department in particular very often upholds the *Sandoval* compromise.[1] The Second Department has upheld

---

1. *See e.g. People v Anderson* (89 AD3d 1161, 1163 [3d Dept 2011]); *People v Weber* (40 AD3d 1267, 1267-1268 [3d Dept 2007]); *People v Kirton* (36 AD3d 1011, 1013 [3d Dept 2007]); *People v Young* (13 AD3d 716, 718 [3d Dept 2004]); *People v Porter* (304 AD2d 845, 846 [3d Dept 2003]); *People v De Chellis* (265 AD2d 735 [3d Dept 1999]); *People v Hagin* (238 AD2d 714, 716 [3d Dept 1997]); *People v Stiffler* (237 AD2d 753, 754 [3d Dept 1997]); *People v Noonan* (220 AD2d 811, 813 [3d Dept 1995]); *People v Elkins* (211 AD2d 921, 922 [3d Dept 1995]); *People v Mahan* (195 AD2d 881, 883 [3d Dept 1993]); *People v Szczepanski* (172 AD2d 884 [3d Dept 1991]); *People v Benson* (123 AD2d 470, 471 [3d Dept 1986]); *People v Handly* (96 AD2d 649 [3d Dept 1983]); *see also e.g. People v Cooke* (101 AD2d 983, 984 [3d Dept 1984]).

or approved of the *Sandoval* compromise regularly too.[2] In the Fourth Department, it is standard practice.[3] However, in the First Department, notwithstanding the provenance of the term *"Sandoval* compromise," the practice is apparently less common. It may be that language in *People v Hayes (supra)* has discouraged the *"Sandoval* compromise." At oral argument, defense counsel noted that it is now commonplace for trial courts in New York City to permit the impeachment of defendants by use of the Penal Law names of their prior crimes, leaving out only the underlying circumstances. Unfortunately, the majority of this Court now encourages the entire State of New York to imitate the "rough justice" of the City.

Because *"Sandoval* error is . . . subject to harmless-error analysis" (*People v Grant*, 7 NY3d 421, 424 [2006]), and because I believe that the case against defendant here was overwhelming and that there is no significant probability that something he could have said in his defense would have resulted in acquittal, I would hold that the *Sandoval* error in this case was harmless. Finally, I do not disagree with the majority's disposition of the substitution-of-counsel issue. Consequently, I concur in the result.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and SMITH concur with Judge JONES; Judge PIGOTT concurs in result in a separate opinion.

Order affirmed.

---

**2.** *See e.g. People v Murad* (55 AD3d 754, 755 [2d Dept 2008]); *People v Pennetti* (182 AD2d 647 [2d Dept 1992]); *see also e.g. People v Michalek* (194 AD2d 568, 569 [2d Dept 1993]); *People v Durham* (154 AD2d 615 [2d Dept 1989]); *People v Powe* (146 AD2d 718, 719 [2d Dept 1989]); *People v Banks* (143 AD2d 677, 678 [2d Dept 1988]); *People v Padilla* (123 AD2d 364, 365 [2d Dept 1986]).

**3.** *See e.g. People v Cruz* (30 AD3d 1047 [4th Dept 2006]); *People v Brazeau* (304 AD2d 254, 255 [4th Dept 2003]); *People v Thomas* (305 AD2d 1099 [4th Dept 2003]).