People v Stackhouse (2021 NY Slip Op 01883)





People v Stackhouse


2021 NY Slip Op 01883


Decided on March 26, 2021


Appellate Division, Fourth Department


Troutman, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 26, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department




PRESENT: WHALEN, P.J., SMITH, CENTRA, TROUTMAN, AND WINSLOW, JJ.


9 KA 16-00757

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SHAKEITH STACKHOUSE, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (KRISTEN MCDERMOTT OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR RESPONDENT. 


Troutman, J.
 Appeal from a judgment of the Onondaga County Court (Anthony F. Aloi, J.), rendered June 19, 2015. The judgment convicted defendant upon a jury verdict of murder in the second degree, robbery in the first degree (two counts), conspiracy in the fourth degree and criminal possession of a weapon in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the facts and on the law, counts two and three of the indictment are dismissed against defendant, [*2]and a new trial is granted on the remaining counts of the indictment against him.
Opinion by Troutman, J.
Defendant appeals from a judgment convicting him upon a jury verdict of one count of murder in the second degree (Penal Law § 125.25 [3]), two counts of robbery in the first degree (§ 160.15 [1], [3]), one count of conspiracy in the fourth degree (§ 105.10 [1]), and one count of criminal possession of a weapon (CPW) in the fourth degree (§ 265.01 [2]). For the reasons discussed herein, we reverse the judgment, dismiss the robbery counts of the indictment against defendant, and grant him a new trial on the remaining counts.
I. Facts
On October 14, 2013, the victim stumbled home, a fatal knife wound in his back. He was pronounced dead that evening. Two days later, the police interviewed defendant, who provided a video-recorded statement. Defendant admitted that, on the evening of the crime, he was on South Salina Street in the City of Syracuse with three other young men—a cousin of his, a juvenile, and Tony Comer, Jr.—when the victim approached them for the purpose of buying drugs. Comer used the promise of drugs to lure the victim into a cut in the roadway and steal his wallet. When Comer and the victim came out of the cut, the victim was shirtless. Comer was smiling, holding the victim's torn, white T-shirt. The victim left, shouting that he would come back with a gun and start shooting. Comer told the others that the victim still had $10 on his person, and the juvenile stated that he wanted the victim's last $10. About 10 or 15 minutes later, the victim returned wearing a sweatshirt, looking for his wallet. Defendant, his cousin, and the juvenile fought the victim. Defendant admitted that, by fighting the victim, he was helping the juvenile to acquire the victim's last $10 and that, during the fight, defendant stabbed the victim once in the back using a knife that he had concealed in his sleeve.
Defendant and the three other young men were indicted jointly on counts of felony murder in the second degree (count one), robbery in the first degree (counts two and three), and conspiracy in the fourth degree (count four), and defendant was also charged with CPW in the fourth degree (count six). With respect to counts two and three against defendant, a bill of particulars alleged:
"[T]he offense occurred . . . between . . . 7:00 p.m. and 7:54 p.m. . . . in an area of . . . three [city] blocks . . . The police located the victim's wallet and some of its contents in a vacant field approximately a block from [the corner of South Salina Street and East Beard Avenue]. The defendant confessed to the police . . . and described these locations and what occurred . . . [He] was aware the victim's wallet was taken and he was aware that the victim had ten dollars and he assisted with taking or attempting to take ten dollars during this entire chain of events that made up the robbery."
On July 18, 2014, defendant wrote a letter to the judge, stating that he had seen defense counsel only twice in the nine months he had been in jail, and that counsel was ignoring his requests to meet and to provide copies of his paperwork. Defendant requested new assigned counsel. County Court did not address defendant's complaints for another six months.
Meanwhile, defendant filed an omnibus motion in which he sought, inter alia, suppression of his video-recorded statement. The court convened a Huntley hearing on November 19, 2014. Before the hearing commenced, defense counsel mentioned his desire to submit a list of necessary redactions in the event that the court were to refuse to suppress the statement. The court eventually denied that part of defendant's omnibus motion seeking [*3]suppression of the statement, at which time defense counsel put on record that the court had previously indicated that it would allow the defense to request redactions. However, no redactions would ever be requested.
On January 27, 2015, the court invited defendant to talk about the complaints that he made about defense counsel over six months earlier. Defendant explained that he and defense counsel were "not seeing eye to eye." The court responded:
"[Y]ou should get along with your lawyer, I guess, about seeing eye to eye. I don't know in terms of what that means, necessarily. But this is on for trial. And I think you and [defense counsel] should get along and communicate. And if you want some more communication with [defense counsel], I'm sure he'll do that as well. But this case is on for trial."
On March 30, 2015, defendant submitted a pro se motion for assignment of new counsel, which the court denied.
On April 28, 2015, defendant wrote a letter informing the court that another attorney was willing to represent him without pushing back the trial date. The court assigned her to represent defendant, emphasizing that the trial date was fixed for May 11, 2015, and would not be pushed back.
Defendant's jury trial commenced on the scheduled date. The People presented defendant's video-recorded police statement, wherein defendant admitted that he fought the victim, that by doing so defendant was helping the juvenile to acquire the victim's last $10, that defendant wielded a knife during the fight, and that during the fight defendant stabbed the victim in the back using the knife. The video was played for the jury virtually in its entirety, allowing the jury to hear defendant's unredacted reference to his prior history of incarceration. The People also presented a surveillance video of the corner of South Salina Street and East Beard Avenue during the relevant time period. The surveillance video depicted the victim wandering around the area, eventually walking out of frame accompanied by three men at 7:46 p.m., and stumbling back into frame alone three minutes later. Testimony of a police officer, as well as photographs in evidence, established that investigators discovered the victim's wallet lying in an open field behind a nearby library. Another photograph depicted the victim's unstained, white T-shirt lying in a nearby patch of grass, and an ATM surveillance photograph depicted Comer using the victim's bank card to withdraw cash at 7:56 p.m.
In summation, the People argued that there was a single robbery: "[Defendant] was present . . . during the entire incident . . . [The defense] repeatedly tried to tease this out as separate incidents. This was one entire robbery. [The victim's] wallet was taken, certainly. And then ten dollars was taken." The jury found defendant guilty on all counts.
II. Legal sufficiency and weight of the evidence
Defendant contends that the conviction with respect to counts one, two, three, and six of the indictment is not supported by legally sufficient evidence, and he further contends that the verdict with respect to those counts is against the weight of the evidence.
A. Counts one and six (felony murder and CPW)
As a preliminary matter, defendant's challenge to the legal sufficiency of the evidence with respect to counts one and six of the indictment is, in part, unpreserved for our review because defendant's motion for a trial order of dismissal was not " 'specifically directed' " at each [*4]of the errors alleged (People v Gray, 86 NY2d 10, 19 [1995]; see People v Murray, 191 AD3d 1324, &mdash, 2021 NY Slip Op 00722, at *1 [4th Dept 2021]). Nevertheless, to the extent that defendant's contention with respect to those counts is unpreserved, we exercise our power to review it as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant contends that his conviction with respect to count one of the indictment, charging felony murder, is based on legally insufficient evidence inasmuch as his confession to the underlying predicate felony of robbery or attempted robbery lacked corroboration (see CPL 60.50). We reject that contention. Under CPL 60.50, "[a] person may not be convicted of any offense solely upon evidence of a confession or admission made by him [or her] without additional proof that the offense charged has been committed." All the statute requires is " 'some proof, of whatever weight, that a crime was committed by someone' " (People v Chico, 90 NY2d 585, 589 [1997], quoting People v Daniels, 37 NY2d 624, 629 [1975]). Although such proof may be direct or circumstantial, it must be proof of the fact of the crime (see People v Cuozzo, 292 NY 85, 92 [1944]). Proof that merely corroborates portions of the statement in which the confession or admission is made will not suffice (see id. at 93). The purpose of the rule is to prevent a conviction of a crime based on a confession when, in fact, no crime has been committed by anyone (see Chico, 90 NY2d at 590; Cuozzo, 292 NY at 92).
Where, as here, a defendant is charged with felony murder based on his or her confession or admission to causing the death of a person in furtherance of a robbery or an attempted robbery, CPL 60.50 does not require independent corroboration of the defendant's confession to the underlying predicate felony, i.e., robbery or attempted robbery (see People v Davis, 46 NY2d 780, 781 [1978]; People v Harper, 132 AD3d 1230, 1231 [4th Dept 2015], lv denied 27 NY3d 998 [2016]). The statute merely requires "proof of the corpus delicti" (People v Murray, 40 NY2d 327, 331 [1976], rearg denied 40 NY2d 1080 [1976], cert denied 430 US 948 [1977]), which, in the case of a felony murder, is "a death resulting from someone's criminality, i.e., a death that did not occur by suicide, disease or accident" (Harper, 132 AD3d at 1231). Here, the fact that the victim died as a result of a knife wound to the back is sufficient corroboration (see id.).
Defendant further contends that the conviction with respect to count one of the indictment is based on legally insufficient evidence because he lacked the intent to forcibly steal property from the victim, as required to establish his culpability for the underlying felony (see Penal Law § 160.15; see generally People v Nichols, 230 NY 221, 226-227 [1921]). We reject that contention. " 'A defendant may be presumed to intend the natural and probable consequences of his [or her] actions . . . , and [i]ntent may be inferred from the totality of conduct of the accused' " (People v Moreland, 103 AD3d 1275, 1276 [4th Dept 2013], lv denied 21 NY3d 945 [2013]; see People v Desius, 188 AD3d 1626, 1627 [4th Dept 2020]). Here, defendant admitted that he had been informed that the victim had $10, that the juvenile wanted to steal the $10, that defendant attacked the victim, and that, by doing so, defendant was helping his cousin and the juvenile steal the victim's last $10. Based on those admissions, a rational jury could infer that defendant had the requisite intent (see generally People v Danielson, 9 NY3d 342, 349 [2007]).
Contrary to defendant's legal sufficiency challenge with respect to count six of the indictment, charging him with CPW in the fourth degree, we conclude that the fact that the victim was stabbed to death sufficiently corroborates his confession (see Penal Law § 265.01 [2]; People v Hawkins, 110 AD3d 1242, 1243 [3d Dept 2013], lv denied 22 NY3d 1041 [2013]) and that the evidence is legally sufficient to establish that defendant intended to use the knife unlawfully against another (see § 265.01 [2]). Furthermore, viewing the evidence in light of the elements of the crimes of felony murder and CPW in the fourth degree as charged to the jury (see [*5]Danielson, 9 NY3d at 349), we conclude that the verdict with respect to those counts is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
B. Counts two and three (robbery)
We agree with defendant that the verdict with respect to counts two and three of the indictment, charging him with robbery in the first degree, is against the weight of the evidence. We note, at the outset, that it is unclear whether the jury convicted defendant of those counts based on the theory that he participated in the theft of the victim's wallet or the theory that he participated in the subsequent theft of the victim's last $10 [FN1]. Nevertheless, because the conviction does not withstand scrutiny under either theory, those counts of the indictment must be dismissed against defendant.
We first address the theory that defendant participated in the theft of the victim's wallet. The cornerstone of the People's case was defendant's confession, wherein defendant stated that Comer stole the wallet, the victim left the area and came back, and then defendant and his companions commenced the fatal attack after that. Defendant's timeline is amply corroborated by physical evidence. The victim's white T-shirt must have been torn from his body before he was stabbed because it was not stained by his blood. The fact that the dying victim was found wearing a sweatshirt soaked in blood establishes that he was wearing the sweatshirt, not the T-shirt, when he was stabbed, as does the surveillance video, which shows the victim wearing the sweatshirt in the minutes before and after the stabbing. The People's assertion that the assailants may have "pulled off both of the victim's shirts" during the attack, and that the victim "simply slid his sweatshirt back on" "during a break in the action," is implausible.
Further, the physical evidence amply corroborates defendant's statement that Comer stole the wallet during the first of the two incidents. The surveillance video shows the victim accompanied by three men, not four men, during the moments before the stabbing, and the ATM photograph depicts Comer using the victim's bank card at around the same time as the stabbing. Because defendant's version of the events is amply supported by the physical evidence, we conclude that, viewing the evidence in light of the elements of the crime of robbery in the first degree as charged to the jury under counts two and three of the indictment (see Danielson, 9 NY3d at 349), the verdict on those counts, to the extent that it is based on the People's theory that defendant participated in the theft of the victim's wallet, is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
With respect to the theory that defendant participated in the theft of the victim's last $10, we conclude that the verdict is against the weight of the evidence inasmuch as defendant's admission to that crime is uncorroborated (see CPL 60.50; People v Maynard, 143 AD3d 1249, 1250-1251 [4th Dept 2016], lv denied 28 NY3d 1148 [2017]). There was no "additional proof" that defendant or anyone else stole or attempted to steal the victim's last $10 (CPL 60.50; see Harper, 132 AD3d at 1231). Thus, although defendant's confession to felony murder was corroborated, his confession to the underlying robbery was not corroborated (see Harper, 132 AD3d at 1231), rendering the verdict on counts two and three, to the extent that they are based on [*6]the only remaining theory, against the weight of the evidence (see Maynard, 143 AD3d at 1251).
III. Suppression
Defendant's contention that the court erred in refusing to suppress his statements to the police is unpreserved because his specific contention is raised for the first time on appeal (see CPL 470.05 [2]; People v Hudson, 158 AD3d 1087, 1087 [4th Dept 2018], lv denied 31 NY3d 1117 [2018]). We decline to exercise our discretion to review it as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
IV. Right to counsel
Defendant contends, for two separate, but intertwined reasons, that the court failed to properly safeguard his constitutional right to counsel (see US Const, 6th Amend; NY Const, art I, § 6). Specifically, defendant contends that the court erred in failing to conduct a minimal inquiry concerning his serious complaints about defense counsel, and that he was denied effective assistance of counsel. We agree with defendant in both respects.
A. Minimal inquiry
Our State and Federal Constitutions guarantee the right to counsel to indigent defendants in criminal proceedings (see People v Smith, 18 NY3d 588, 592 [2012]; People v Porto, 16 NY3d 93, 99 [2010]). Although the right does not encompass the right to an attorney of one's own choosing (see Porto, 16 NY3d at 99), an indigent person's right to counsel is just as important as that of a person who can afford to retain counsel. Indeed, the right to counsel is not merely a right to the pro forma assignment of a member of the bar (see People v Medina, 44 NY2d 199, 207 [1978]). Counsel must provide " 'effective' " representation (id.; see People v Baldi, 54 NY2d 137, 146 [1981]), and it is well established that the courts have an "ongoing duty" to safeguard that right (People v Linares, 2 NY3d 507, 510 [2004]; see Medina, 44 NY2d at 207).
Consistent with that duty, "courts must carefully evaluate serious complaints about counsel" (Smith, 18 NY3d at 592 [internal quotation marks omitted]; see Porto, 16 NY3d at 99-100). If the defendant advances "specific factual allegations of 'serious complaints about counsel' " (Porto, 16 NY3d at 100, quoting Medina, 44 NY2d at 207), the court is obligated to conduct "a 'minimal inquiry' " (id., quoting People v Sides, 75 NY2d 822, 825 [1990]). The purpose of such an inquiry is to allow the court to "discern meritorious complaints from disingenuous applications by inquiring as to 'the nature of the disagreement or its potential for resolution' " (id., quoting Sides, 75 NY2d at 825). If " 'good cause' " is shown, the court must grant a request for assignment of new counsel (id.; see Smith, 18 NY3d at 592). In deciding if good cause exists, a "trial court must consider the timing of the defendant's request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance" (Linares, 2 NY3d at 510; see Porto, 16 NY3d at 100). " 'Good cause determinations are necessarily case-specific' " (Smith, 18 NY3d at 592, quoting Linares, 2 NY3d at 510), though good cause is generally found to be lacking where " 'tensions between client and counsel on the eve of trial were the precipitate of differences over strategy' or 'where a defendant was guilty of delaying tactics' " (id. at 593, quoting Medina, 44 NY2d at 208).
Here, defendant's initial request for new counsel "was supported by specific factual allegations of serious complaints about counsel" (People v Smith, 30 NY3d 1043, 1044 [2017] [internal quotation marks omitted]). Specifically, defendant alleged that he had seen defense [*7]counsel only twice in the preceding nine months that he had been jailed, and defense counsel was ignoring his requests to meet and to provide copies of his paperwork. Although defendant's request obligated the court to conduct "a 'minimal inquiry' into 'the nature of the disagreement or its potential for resolution' " (id.), the court proceeded to a Huntley hearing and decided that part of defendant's omnibus motion seeking suppression without acknowledging defendant's complaints. Indeed, the court did not acknowledge his complaints until more than six months later, at which time the court addressed defendant's complaints with an open-ended question. Defendant briefly stated that he and defense counsel were not "seeing eye to eye." The court did not understand why, but, rather than seek to clarify the nature of the disagreement, the court gave a lengthy speech that defended defense counsel's performance and recited platitudes about communication while repeatedly noting the pending trial date, which was at that point 3½ months away. "The court might well have found upon limited inquiry that defendant's request was without genuine basis, but it could not so summarily dismiss this request" (Sides, 75 NY2d at 825).
Although the court eventually granted defendant's request for new counsel—fully three months later—she was not appointed until shortly before trial. Defendant did not request an adjournment of the trial date at that time, but it seems clear that he had internalized the court's insistence on a May 11 trial date, and it was the court's earlier error that forced defendant to choose between one attorney he did not want and another who had less than two weeks to prepare for a complicated murder trial. The relative lack of preparation time may have been a factor in replacement counsel's failure to seek redaction of the video-recorded statement, but such a showing is not necessary. "Courts should not delve into questions of prejudice when assistance of counsel is involved" (People v Carr, 25 NY3d 105, 112 [2015]). Thus, we conclude that the court's error in failing to inquire into defendant's complaints about defense counsel in an adequate or timely fashion requires reversal of the judgment of conviction with respect to the remaining counts of the indictment against defendant, i.e., counts one, four, and six, and we grant a new trial on those counts of the indictment against him (see Sides, 75 NY2d at 824-825).
B. Ineffective assistance of counsel
Although many of the errors alleged by defendant do not rise to the level of constitutional ineffectiveness (see generally Baldi, 54 NY2d at 147), we agree with defendant that, under the unique circumstances of this case, he was denied effective assistance of counsel by defense counsel's failure to seek any redaction of his video-recorded statement once the court refused to suppress it. The record reflects that the court indicated that defendant would be allowed to submit a list of proposed redactions, but no list was submitted. The jury was thus permitted to hear defendant's reference to his history of incarceration. "It is axiomatic that the prosecution is prohibited from introducing evidence of the past criminal record of a defendant where, as here, he has not taken the stand in his own behalf or put his character in issue" (People v Mullin, 41 NY2d 475, 479 [1977]), and thus that portion of the video should have been redacted upon an application by defendant (see generally People v Ag, 127 AD3d 581, 582 [1st Dept 2015], lv denied 25 NY3d 1159 [2015]). Other portions may have been the subject of a meritorious application based on the ground that certain statements were more prejudicial than probative (see generally People v Scarola, 71 NY2d 769, 777 [1988]) and, although we cannot say that there would be no strategic or tactical reason for declining to seek redaction of those portions of the video, we conclude that defense counsel's inexplicable failure to seek redaction of defendant's reference to his criminal history demonstrates that defense counsel lacked a strategic or tactical rationale for failing to seek redaction of the other arguably prejudicial portions of the video (see generally People v Benevento, 91 NY2d 708, 712 [1998]).
We note that, in concluding that defendant was denied effective assistance of counsel, we do not fault either of his attorneys individually. Defendant's first attorney was not allowed to see the representation through, and his second attorney was given only 10 days to prepare. Nevertheless, in reviewing defendant's contention, we consider the evidence, the law, and the circumstances of the case in their totality (see Baldi, 54 NY2d at 147). Here, the court's mishandling of defendant's request for new counsel created a circumstance that rendered the representation ineffective in its totality, and that denial of effective representation also requires reversal of the judgment with respect to the remaining counts of the indictment against defendant and a new trial on those counts against him. In light of our determination, we do not reach defendant's remaining contentions.
Entered: March 26, 2021
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: Defendant does not contend that the counts of the indictment charging him with robbery were facially duplicitous or rendered duplicitous by the People's evidence at trial (see generally CPL 200.30 [1]; People v Bauman, 12 NY3d 152, 154 [2009]; People v Quiros, 185 AD3d 1546, 1547 [4th Dept 2020], lv denied 36 NY3d 1053 [2021]), and therefore we have no occasion to address those issues here.