People v Robinson (2021 NY Slip Op 03939)





People v Robinson


2021 NY Slip Op 03939


Decided on June 17, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 17, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, LINDLEY, AND TROUTMAN, JJ.


189 KA 18-02085

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
THEODORE ROBINSON, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (CHRISTINE M. COOK OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered May 2, 2018. The judgment convicted defendant upon a jury verdict of robbery in the third degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law and the indictment is dismissed without prejudice to the People to re-present any appropriate charges to another grand jury.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of robbery in the third degree (Penal Law § 160.05), defendant contends that County Court erred in denying his request for new counsel without conducting a minimal inquiry concerning his serious complaints about defense counsel. We agree.
Defendant was indicted on a count of robbery in the first degree (Penal Law § 160.15 [4]). During a pretrial appearance, defendant requested new counsel and explained: "I have asked my attorney over and over again to come by and see me, bring me paperwork and talk about matters. I have nothing. It's been like about nine months . . . He still hasn't responded to me . . . my lawyer is not taking this case very seriously." The court stated that this was "a problem." Defendant added: "I didn't even know I was indicted on this charge," referring to an unrelated burglary charge that was also pending. The court noted that defendant was in court when he was arraigned on the burglary charge, and stated that defense counsel had "filed every single piece of paper that he needs to file to defend this case." With respect to defendant's allegation that his attorney had ignored his repeated inquiries over the preceding nine months, the court stated: "I understand that every defendant who's in custody would like their attorney to come over once a week or sooner, but it's just not the way it works." The court assured defendant that he would have "all the paperwork" that he needed and that defense counsel would be fully prepared, adding that the case "should be worked out" by plea bargain.
Over two months later, defendant followed up on his prior complaints, stating that he had not seen defense counsel between court appearances and still did not have the paperwork that was previously discussed. Defendant also stated: "we have a lot of conflict, him and I, in terms of the case itself. He is saying things I didn't say and I am telling him he did say. And we are just going back and forth." The court assured defendant that it was "sure" defense counsel would provide "whatever paperwork" defendant wanted and noted that defendant and his attorney had been present together in court during pretrial appearances. The court, however, explained: "If there is someone you want to hire instead . . . , no problem. You feel free. The law states we have to give you an attorney. I have given you . . . one of the best defense attorneys in this County . . . maybe he is not the best baby-sitter of all time, but he is one of the best lawyers . . ."
Defendant was acquitted of robbery in the first degree after a jury trial, but was convicted of the lesser included offense of robbery in the third degree.
"Our State and Federal Constitutions guarantee the right to counsel to indigent defendants in criminal proceedings" (People v Stackhouse, 194 AD3d 113, 122 [4th Dept 2021]; see People v Smith, 18 NY3d 588, 592 [2012]; People v Porto, 16 NY3d 93, 99 [2010]). "Although the right does not encompass the right to an attorney of one's own choosing . . . , an indigent person's right to counsel is just as important as that of a person who can afford to retain counsel. Indeed, the right to counsel is not merely a right to the pro forma assignment of a member of the bar . . . Counsel must provide effective representation . . . , and it is well established that the courts have an ongoing duty to safeguard that right" (Stackhouse, 194 AD3d at 122 [internal quotation marks omitted]; see People v Medina, 44 NY2d 199, 207 [1978]). Consistent with that duty, where a defendant makes a seemingly serious request for new counsel, the court must make some minimal inquiry to determine whether the claim is meritorious (see People v Sides, 75 NY2d 822, 824-825 [1990]). The purpose of such an inquiry is to "discern meritorious complaints from disingenuous applications by inquiring as to 'the nature of the disagreement or its potential for resolution' " (Porto, 16 NY3d at 100; see Stackhouse, 194 AD3d at 122). The court must upon a showing of " 'good cause' " grant a defendant's request for new counsel (Porto, 16 NY3d at 100; see Stackhouse, 194 AD3d at 122). A complete breakdown of communication between an attorney and his or her client, if established, constitutes good cause for substitution (see Sides, 75 NY2d at 824-825; People v Gibson, 126 AD3d 1300, 1302 [4th Dept 2015]).
Here, we conclude that defendant's complaints were sufficiently serious to trigger the court's duty to inquire (see People v Smith, 30 NY3d 1043, 1043-1044 [2017]; People v Edwards, 173 AD3d 1615, 1616-1617 [4th Dept 2019]). Indeed, the complaints suggested on their face the possibility of a complete breakdown of communication with defense counsel, either owing to or exacerbated by defense counsel's alleged unwillingness to respond to any of defendant's repeated inquiries over nearly 12 months of representation; were evidenced by defendant's apparent confusion over the status of the separate indictments; and were never refuted by defense counsel, who remained silent in response to defendant's repeated in-court complaints (see generally Sides, 75 NY2d at 824-825). Further, the court itself appeared to acknowledge that defendant's complaints, if true, established that there was "a problem" with the representation.
Thus, the court had a duty to conduct a minimal inquiry, which the court failed to do (see id.; Edwards, 173 AD3d at 1617). Rather than conduct such an inquiry, the court merely assured defendant that his attorney was competent and representing him effectively, would be fully prepared for trial, and would provide copies of defendant's "paperwork," the nature of which is unclear because the court never clarified what paperwork, if any, was outstanding or whether the paperwork had any import to the defense.
Even assuming, arguendo, that the court conducted a minimal inquiry, as our dissenting colleagues contend, we conclude that the inquiry was inadequate because the court did not explore " 'the nature of the disagreement or its potential for resolution' " (Porto, 16 NY3d at 100).
Because defendant was convicted of robbery in the third degree as a lesser included offense of robbery in the first degree, the indictment must be dismissed without prejudice to the People to re-present any appropriate charges to another grand jury (see People v Fagan, 24 AD3d 1185, 1187 [4th Dept 2005]). In light of our determination, we do not consider defendant's challenge to the severity of his sentence.
All concur except Whalen, P.J., and Peradotto, J., who dissent and vote to affirm in the following memorandum: We respectfully dissent inasmuch as we conclude that County Court conducted the requisite minimal inquiry into defendant's complaints about defense counsel prior to denying his request for new counsel.
"[T]he right to be represented by counsel of one's own choosing is a valued one, and a defendant may be entitled to new assigned counsel upon showing 'good cause for a substitution' " (People v Sides, 75 NY2d 822, 824 [1990]). The imposition of a duty of inquiry on the court is [*2]to ensure that there is, inter alia, no "conflict of interest or other irreconcilable conflict with [defense] counsel" that would constitute such good cause (id.). Here, defendant raised a concern that defense counsel had not been to see him and requested new counsel because he "believe[d] there's a conflict of interest." We agree with the majority that defendant arguably made a "seemingly serious request[]" for new counsel, particularly where the record reflects that the parties were temporarily confused at that time over the existence of a separate burglary charge (id.; cf. People v Barnes, 156 AD3d 1417, 1418 [4th Dept 2017], lv denied 31 NY3d 1078 [2018]). In our opinion, however, the court did make a "minimal inquiry" into "the nature of the disagreement or its potential for resolution" (Sides, 75 NY2d at 825; see also People v Brady, 192 AD3d 1557, 1558 [4th Dept 2021]).
Specifically, the court permitted defendant to "articulate his complaints about defense counsel" and the perceived conflict (People v Jones, 173 AD3d 1628, 1630 [4th Dept 2019]). Defendant's further responses clarified for the court that there was no actual conflict between defendant and defense counsel, rather defendant was concerned about a perceived lack of communication and that defense counsel was "not taking this case very seriously." The court then appropriately considered " 'whether present [defense] counsel [wa]s reasonably likely to afford [this] defendant effective assistance' " (People v Smith, 18 NY3d 588, 592 [2012]) by addressing the specific work that defense counsel had performed on the case to date. The court provided defendant another opportunity to be heard on defense counsel's performance and conducted a similar inquiry several months later when defendant raised another general concern about defense counsel. Thus, this is not a case where the court "erred by failing to ask even a single question about the nature of the disagreement or its potential for resolution" (Sides, 75 NY2d at 825). Instead, because the court "repeatedly allowed defendant to air his concerns about defense counsel" and reasonably concluded after listening to those concerns that they "were insufficient to demonstrate good cause for substitution of counsel" (People v Larkins, 128 AD3d 1436, 1441 [4th Dept 2015], lv denied 27 NY3d 1001 [2016] [internal quotation marks omitted]), we would affirm.
Entered: June 17, 2021
Mark W. Bennett
Clerk of the Court